---

VILLAGE OF MEDINA v. TITLE GUARANTY & SURETY CO. OF SCRANTON, PA., et al.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1912.)

1. MUNICIPAL CORPORATIONS (§§ 347, 356*)—MUNICIPAL CONTRACTS—EIGHT-HOUR LAW—VIOLATION—CONSTRUCTIVE NOTICE.

A board of sewer commissioners of a city are chargeable with notice that contractors engaged in building a sewer worked their men ten hours a day, where a majority of them had actual and continuing knowledge of the fact, even though the board passed no resolution declaring that they had such notice, and under Labor Law (Consol. Laws 1909, c. 31) § 3, as amended by Laws 1909, c. 292, providing that municipal contractors shall not be permitted to work their employés over eight hours a day, and that upon a violation of such provision the contractors shall not be entitled to receive nor the corporation to pay any sum for work done on the contract, the city, making payments for such work, could not in an action on the bond of the contractors assert such payment as a part of the expense of the work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 876, 877, 888; Dec. Dig. §§ 347, 356.*]

2. MUNICIPAL CORPORATIONS (§ 339*)—PUBLIC IMPROVEMENTS—HOURS OF LABOR—STATUTORY PROVISIONS—RIGHT TO ABROGATE TERMS.

Such statute is not only intended to preclude contractors from enforcing their claims where the statute has been violated, but also to re-

strain the corporation from paying or permitting payment of claims, and a city could not, by agreement with contractors engaged in building a sewer, abrogate its provisions.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 868, 870–873; Dec. Dig. § 339.*]

3. MUNICIPAL CORPORATIONS (§ 374*) — PUBLIC IMPROVEMENTS — EIGHT-HOUR LAW—VIOLATION—QUANTUM MERUIT.

And the contractors are not entitled to treat the contract as at an end and recover as on a quantum meruit, as the statute would thereby be evaded and rendered ineffective.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. § 374.*]

4 MASTER AND SERVANT (§ 13*)—HOURS OF LABOR—HOURS OF LABOR ON PUBLIC WORK—CONSTITUTIONALITY OF STATUTE.

Labor Law (Consol. Laws 1909, c. 31) § 3, as amended by Laws 1909, c. 292, which fixes and regulates the hours of labor on public work by limiting it to eight hours a day, and provides that, when the limit is exceeded, no state or municipal officer shall be permitted to pay therefor from funds under his official control, is constitutional.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

5. MUNICIPAL CORPORATIONS (§ 348*) — PUBLIC IMPROVEMENTS — ACTION ON BOND—PLEADING—GENERAL DENIAL.

Where, in a complaint by a city on the bond of a sewer contractor, the payment of sums on the contract was alleged, a general denial in the answer of the defendant surety company was sufficient to put the legality of such payments in issue, and pleading the illegality in terms was unnecessary.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 878; Dec. Dig. § 348.*]

6. CONTRACTS (§ 346*)—ACTIONS—GENERAL DENIAL.

Under a general denial in an action on contract, the defendant may controvert by evidence anything which the plaintiff is bound or permitted to prove to make out its cause of action.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718–1753; Dec. Dig. § 346.*]

7. MUNICIPAL CORPORATIONS (§ 347*) — PUBLIC IMPROVEMENTS—CONTRACTS—RELEASE OF SURETY.

A surety company guaranteeing the performance of a contract for building a sewer system was relieved from liability by the working of employés on the contract more than eight hours a day, contrary to the labor law and with the tacit consent of the city, but without its knowledge.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 876, 877; Dec. Dig. § 347.*]

McLennan, P. J., dissenting.

Appeal from Judgment Entered on Report of Referee.

Action by the Village of Medina against the Title Guaranty & Surety Company of Scranton, Pa., impleaded with others. From a judgment for defendant named dismissing plaintiff's complaint on the merits, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

John J. Ryan and Leroy J. Skinner, of Medina, for appellant.
George E. Dennison, of Utica, for respondents.

ROBSON, J. Plaintiff is an incorporated village, and the defendant company is a foreign corporation authorized to engage in this state in the business of executing indemnity, or surety, bonds, and acting as surety. May 1, 1907, defendants, Dingledine & Patten made a written contract with plaintiff to build and construct a designated part of its sewer system for the sum of $37,347.50. The contractors a few days after the contract was signed began work under the contract. As required by the contract, they thereafter furnished a bond, executed by themselves as principals and the defendant Title Guaranty & Surety Co. as surety to the plaintiff, as obligee therein, in the penal sum of $18,673.75, conditioned for the full and faithful performance and fulfillment by the said principals of the said contract, and also to save the plaintiff and its board of sewer commissioners harmless from any and all damages in any way resulting from or growing out of the performance and fulfillment of the contract by the principals named in said bond.

Plaintiff in its complaint alleges that it has been damaged to an amount beyond the penalty of the bond by reason of the failure of defendant contractors to fully perform and complete their contract, and demands judgment against each defendant for the full amount of the bond. The referee directed judgment dismissing the complaint upon the merits, with costs. Defendant Surety Company caused a separate judgment in its favor to be entered dismissing the complaint as to it with costs; and it is from this judgment that this appeal is taken.

[1] There is little dispute as to the facts; and the case presents only so much of the evidence as relates to two findings of fact, to which exception was taken by plaintiff. Plaintiff at all times in making the contract, in overseeing its performance, and directing the payments made by plaintiff thereon acted by its board of sewer commissioners. Their authority to so act and represent the plaintiff as its officers for that purpose is not questioned. One of the findings to which exception is taken is to the effect that during all the time the contractors were engaged in the work upon the contract plaintiff's officers—i. e., its sewer commissioners—were aware that the contractors employed their men in the contract work 10 hours each working day. The preceding finding that the contractors during the whole period of their performance of the work under the contract employed substantially all the men worked thereon ten hours each working day was not excepted to, and is amply sustained by the evidence. Plaintiff claims that the evidence fails to show that the board of sewer commissioners as a board had such knowledge, and also that the board as a board took no action indicating a recognition of that fact. But the evidence clearly shows that from the very beginning of the work at least three of the five members comprising the board had actual and continuing knowledge of the fact. Cleary, its president, testifies to the fact that he was over the work practically every

day, and gives the hours when the men began and quit work on the sewer, showing that they worked 10 hours a day. Mead, another commissioner, was plaintiff's inspector of the work, and says, "I was on the job there practically every day." Stork, another member of the board until some time after August 12th, was during this time employed by the contractors as a foreman on the work. Cosgrove, who succeeded Stork as commissioner, lived on one of the streets in which the sewer was built, and passed back and forth on that street every day during the progress of the work. The evidence is ample to show that plaintiff through its officers had actual notice of the fact that the contractors' men were worked 10 hours a day on the job. It is unnecessary, as plaintiff's counsel seems to claim, that before plaintiff can be found chargeable with notice of the fact, it must appear that its board of sewer commissioners should by resolution declare they had such notice. The other finding of fact to which exception is taken is immaterial in view of the disposition of the case made by the referee.

The learned referee has found that the contractors violated the provisions of section 3 of the Labor Law (Laws of 1906, c. 506, now Laws of 1909, c. 36, being chapter 31 of Consolidated Laws as amended by Laws of 1909, c. 292) by continuously working the men employed on this contract more than eight hours a day, with the full knowledge of plaintiff, although there was no "extraordinary emergency caused by fire, flood or danger to life or property." Under these circumstances, as the section further provides, the contractors were not entitled to receive, nor the plaintiff to pay, nor authorize the payment of, any sum for work done upon this contract, for the reason that "in the manner of its performance" the provision of the section was violated. As the referee says in his opinion:

"It [the statute] expressly prevented any claim from accruing in favor of the contractor who worked his men over eight hours per day. It not only forbade payment, but it prevented the debt from ever existing."

Payments were made by plaintiff to the contractors aggregating upwards of $29,000. By no possible computation of damages could plaintiff show it had suffered to that amount by reason of any act or default of the contractors in failing to complete the contract according to its terms. The payments made were at least as to the Surety Company mere gratuities, because no valid claim under the contract ever matured in behalf of the contractors, and plaintiff was expressly prohibited by the statute from making any payment on account thereof. The agreement of the Surety Company found in the bond did not, either in form or substance, make its relation to plaintiff that of a security for damages accruing solely by reason of plaintiff's acts, which it was expressly prohibited by the statute from doing or permitting. The referee satisfactorily sums up the argument on this point as follows:

"When it (the plaintiff) did pay for the work, it assumed an obligation which did not exist. Whatever its remedy was, it could not pay for such work in violation of the statutory prohibition, and then in its action for breach of the bond assert this payment as a part of the expense of the work to it."

[2] Plaintiff, however, insists that this provision of the statute which would have precluded the contractors from enforcing against it their claims under the contract was solely for the benefit of plaintiff, and might furnish a defense, which it alone could urge, and which could therefore be waived by it. But in asserting this position the equally mandatory provision prohibiting it from paying or permitting payment of the claims is overlooked. As the referee suggests, a valid waiver of the provisions of the statute could not in this case be established "without, in effect, holding that a municipal corporation and a contractor by mutual action might abrogate the provisions of the statute and create a valid obligation of the municipality to pay for what the law forbade payment to be made."

[3] But it may be claimed that the contractors would have been entitled to recover of plaintiff for the work done upon the principle of a recovery quantum meruit, and payment of the amounts made by plaintiff may be considered as made upon that basis; and for that reason held valid. It is difficult to see how a contractor having a contract with a municipality, which he agrees to perform, and the performance of which in the manner prescribed by this section of the Labor Law alone gives him a right to compensation for work done, can, even with the consent of the municipality, treat the contract as abandoned, and recover for the value of the services actually rendered. If that could be done, then, as was said above in regard to a waiver, the statute could be readily made of no effect. Besides, so far as the liability of the Surety Company is concerned, that is by the terms of the bond limited to such damages as arise from a nonfulfillment of the contract plaintiff had with the contractors, not such damages as might occur in the event the contract is to be treated as mutually abandoned by the parties thereto, without its knowledge or consent.

[4] That this section of the Labor Law and the method of its enforcement therein provided are constitutional was decided in People ex rel. Williams Eng. & Con. Co. v. Metz, 193 N. Y. 148, 85 N. E. 1070, 24 L. R. A. (N. S.) 201. Referring to the opinion then delivered, we find (at page 159 of 193 N. Y., at page 1074 of 85 N. E., 24 L. R. A. [N. S.] 201) this expression of the court's decision:

"Our conclusion upon this branch of the case is that, in view of the history of the amendment in question and the causes which led to it, the Legislature now has the power, and had when the present Labor Law was enacted, to fix and regulate the hours of labor on public work by limiting them to eight hours in one calendar day, and *to provide that, when that limit is exceeded, no officer of state or municipal government shall be permitted to pay therefor from funds under his official control.*"

[5, 6] Appellant's counsel insists that the referee's decision was based upon an issue not tendered by the answer, because defendant did not in terms plead that the payments made by plaintiff to the contractors were prohibited by the statute. But to establish its case plaintiff was required both to allege and prove payment by it to the contractors of the sums in question. These payments were put in issue by the general denial in the answer of the Surety Company. Not only the fact that the payments were made, but also their validity and legality as

payments, were thus put in issue. The authorities amply sustain the referee in his conclusion that:

"Under a general denial in an action on contract, defendant may controvert by evidence anything which plaintiff is bound to prove in the first instance to make out his cause of action, or anything he is permitted to prove for that purpose."

[7] The Presiding Justice in his opinion, handed down herewith, takes the position that the contract between the village and the contractors, though it did not in fact contain the stipulations required by the statute, must yet be read, construed, and treated as though they had in fact been written in it. Assuming this view is correct, the contract would then have provided expressly that it "shall be void and of no effect unless" the contractors should comply with the provisions of the section. They did not so comply, as has been pointed out above. Even conceding that plaintiff could waive as to it its right to insist for that reason that the contract was void, and could consent that the contractors might continue their illegal manner of its performance, yet this concerted action by plaintiff and the contractors, of which the Surety Company had no knowledge, or notice, and to which it was in no way a party, could not alter, or impair, its rights, or enlarge, or change, its obligations as surety. The contract, performance of which it had guaranteed, was one to be performed in accordance with the statutory requirements. When these provisions were with plaintiff's tacit consent continuously disregarded and violated by the contractors, then, as to the Surety Company, the contract became and was void, and no liability for nonperformance of the contract remained; for, as to it, there was no longer any contract to which its guaranty of performance could apply.

The judgment should be affirmed, with costs. All concurred, except McLENNAN, P. J., who dissented in an opinion.

McLENNAN, P. J. (dissenting). There is substantially no dispute as to the facts in this case. On May 1, 1907, the defendants Dingledine & Patten entered into a contract with the plaintiff, an incorporated village, through its officers, for the construction of a sewer for the agreed price of $37,347.50, and commenced work thereon at about the same time. On June 27, 1907, the defendant Title Guaranty & Surety Company, as surety, and Dingledine & Patten, as principals, delivered to plaintiff a bond dated June 17, 1907, in the penal sum of $18,673.75, conditioned for the full and faithful performance of all the terms and conditions of the said contract, guaranteeing to save the plaintiff harmless from any and all damages in any way resulting from or growing out of the performance and fulfillment of said contract by the contractors. The contractors continued work until December 27, 1907, when for sufficient cause the village, after giving proper notice, itself took possession of and completed the work called for by the contract. Prior to that time it had paid the contractors $29,268.83 on the work at various times, as the work progressed, which was received by the contractors without any suggestion that the contract entered into by them was invalid. After tak-

ing over the work, the village expended the further sum of $20,-846.86, and, after deducting for extras, it was shown that the village had expended the sum of..$7,352.94 over and above the contract price, for which sum plaintiff demands judgment, together with the penalty of $50 per day for delay in completing the work as prescribed by the contract.

The referee has found:

"That the officers of the plaintiff during all of said time when the defendants Dingledine & Patten were so engaged in work upon the said contract were aware that the said defendants employed their men 10 hours each working day."

This he finds to be a violation of the provisions of section 3 of the Labor Law, on account of which violation the contractors were not entitled to receive, nor was any officer of the plaintiff entitled to pay, any sum for the work done upon the contract, and that any payments so made were unauthorized, and cannot for the purpose of this action be included as a part of the.expenses to the plaintiff of the said. work, and, inasmuch as the further sums expended by the plaintiff are less than the contract price, the referee finds that the defendants are entitled to judgment against the plaintiff dismissing the complaint on the merits, with costs. A separate judgment in favor of the defendant Surety Company was entered, and from such judgment this appeal is taken.

. Section 3 of the Labor Law contains, among other things, the following provisions:

"Eight. hours shall constitute a legal day's work for all classes of employés in this state except those engaged in farm and domestic service unless otherwise provided by law. * * *

"This.section does not prevent an agreement for overwork at an increased compensation except upon work by or for the state or a municipal corporation, or by contractors or subcontractors therewith. Each contract to which the state or.a municipal corporation is a party which may involve the employment of laborers, workmen or mechanics shall contain a stipulation that no laborer, workman or mechanic in the employ of the contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight hours in any one calendar day except in cases of extraordinary emergency caused by fire, flood or danger to life or property. * * * .

"Each contract for such public work hereafter made shall contain a provision that the same shall be void and of no effect unless the person or corporation making or. performing the same shall comply with the provisions of this section; and no such person or corporation shall be entitled to receive any sum nor shall any officer, agent or employé of the state or of a municipal corporation pay the same or authorize its payment from the funds under his charge or control to any such person or corporation for work done upon any contract, which in its form or manner of performance violates the provisions of this section."

I think the finding of fact made by the referee as to the knowledge of the plaintiff and its officers concerning the violation of this section of the Labor Law by the contractors is amply supported by the evidence, but I cannot agree with the conclusion reached by the learned referee that under the circumstances shown the contractors

and their surety were relieved from all further liability in reference to the contract. While the section quoted requires certain stipulations as to hours of labor in any contract of the kind involved in this action, I do not think that the failure to insert such stipulations renders such a contract void on its face, but, rather, that the contract is to be considered as having been made in contemplation of such statute, and that it must be assumed that the statute is to be read into and become a part of such contract; but even so the Labor Law is a civil act, entirely independent of the penal act referring to the same subject, and the section quoted is for the benefit of the village. The acts prohibited by that section are not illegal in and of themselves, but are rendered illegal solely by prohibition of the law, and it seems to me that, while the village had the right to refuse to make any payments for work done in violation of the section, it still had the right to waive this provision of law for its benefit and accept and pay for the work in the manner in which it did. It would seem to me clear that the contractors could not set up their own acts in violation of this statute as a sufficient reason for refusing to complete the contract, and I think such defense is no more available to their surety than to themselves. No question is made but that the value of the work done by the contractors amounted to the sum of $29,-268.83, which the village paid, and to complete the work according to the contract it became necessary for the village to expend several thousand dollars more than the contract price. In this respect I think the contracting company failed to perform its contract and that the Surety Company was liable for such nonperformance, and that this provision of the law, even if it be deemed to be a part of the contract, is not available to the Surety Company in view of the fact that the principal of the surety had received the money and had accepted the benefits under the provisions of the contract.

I therefore conclude that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.