In the Matter of RANDOLPH MCNUTT COMPANY, Respondent, against WILLIAM A. ECKERT, as Comptroller of the City of Buffalo, Appellant.

(Argued June 1, 1931; decided July 15, 1931.)

*Charles L. Feldman, Corporation Counsel (Andrew P. Ronan* of counsel), for appellant. The contract made between the Board of Education and the respondent is illegal and void. (McQuillin Mun. Corp. §§ 1309, 1311; *Bigler* v. *Mayor*, 5 Abb. N. C. 51; *Warnock & Zarndt, Inc.*, v. *Ray*, 132 Misc. Rep. 882.) It was the duty of the Comptroller to refuse to affix his countersignature to the warrant for the payment of money under the contract. (*Matter of Poucher* v. *Berry*, 249 N. Y. 16; *Matter of Fuhrmann* v. *Graves*, 235 N. Y. 77; *Matter of Fleischmann* v. *Graves*, 235 N. Y. 84; *Matter of Brennan* v. *Board of Education*, 245 N. Y. 8; *Schieffelin* v. *Komfort*, 212 N. Y. 520; *Ford* v. *O'Shea*, 136 Misc. Rep. 921; 228 App. Div. 772; *Smith* v. *Hedges*, 223 N. Y. 176.)

*Daniel J. Kenefick* and *Theodore G. Kenefick* for respondent. The only duty of the Comptroller when the warrant was presented to him for his countersignature was to satisfy himself of the genuineness of the signature of the Board of Education on the warrant, that the funds were used for educational purposes and that there were sufficient funds to the credit of the Board appropriated for the purpose, and he was not authorized to determine the legality of the charge. (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84; *Matter of Fuhrmann* v. *Graves*, 235 N. Y. 77; *Matter of Brennan* v. *Board of Education*, 245 N. Y. 8; *Matter of Board of Education* v. *Dibble*, 136 Misc. Rep. 171; *Matter of Poucher* v. *Berry*, 249 N. Y. 17.) Even had the Comptroller power to question the legality of the specifications, the omission to state the quantities of each item and the specific time of delivery constitutes no irregularity. (*Kingsley* v. *City*

*of Brooklyn*, 78 N. Y. 200; *East* v. *Cayuga*, 21 N. Y. 887; *Wells* v. *Alexander*, 130 N. Y. 642; *Standard Co.* v. *Ostrom*, 16 App. Div. 220; *Ehrenworth* v. *Stuhine*, 229 N. Y. 210; *City of New York* v. *Paoli*, 202 N. Y. 18; *Edison* v. *Thatcher*, 229 N. Y. 172.)

Arthur J. W. Hilly, Corporation Counsel (*William E. C. Mayer* and *J. Joseph Lilly* of counsel), for the Comptroller of the city of New York, *amicus curiæ*. The statute must be complied with, inasmuch as it allows no variation from its express terms. (*People ex rel. Ream Pavement Co.* v. *Board of Improvement*, 43 N. Y. 227; *Matter of Merriam*, 84 N. Y. 596; *Matter of Anderson*, 109 N. Y. 554; *Matter of Rosenbaum*, 119 N. Y. 24; *Gage* v. *City of New York*, 110 App. Div. 403; *Hart* v. *City of New York*, 201 N. Y. 45; *Warnock* v. *Wray*, 194 N. Y. Supp. 396; *Matter of Langdon* v. *Teachers' Retirement Board*, 135 Misc. Rep. 271; 226 App. Div. 870; 252 N. Y. 508; *People ex rel. Burnet* v. *Jackson*, 85 N. Y. 541; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125; *Matter of Brennan* v. *Board of Education*, 245 N. Y. 8.)

CRANE, J. The Randolph McNutt Company furnished thirty-three teachers' desks to the Board of Education of the city of Buffalo, under contract awarded to it for various items of public school furnishings. The thirty-three desks, according to the contract price, amounted to $759, for which the warrant of the Board was drawn, payable to the Randolph McNutt Company and sent to the Comptroller for his counter signature. The Comptroller has refused to sign, and the peremptory order of mandamus appealed from compels him to do so. The action of the Comptroller is due to the form of the specifications prepared by the Board of Education calling for bids. Although we cannot follow the Comptroller and his adviser, the Corporation Counsel, to their conclusion that the contract for school furnishings given to the Randolph McNutt Company is illegal, we appreciate

their hesitancy in recognizing as legal the methods adopted by the Board of Education.

Subdivision 8 of section 875 of the Education Law (Cons. Laws, ch. 16) reads as follows:

" 8. No contract for the purchase of supplies, furniture, equipment, or for the construction or the alteration or remodelling of any building shall be entered into by a board of education involving an expenditure or liability of more than one thousand dollars unless said board shall have duly advertised for estimates for the same and the contract in each case shall be awarded to the lowest responsible bidder furnishing the security as required by such board."

Section 880 of the same law (Subds. 2 and 3) reads:

" 2. Such funds shall be disbursed only by authority of the board of education and upon written orders drawn on the city treasurer or other fiscal officer of the city. Such orders shall be signed by the superintendent of schools and the secretary of the board of education or such other officers as the board may authorize. Such orders shall be numbered consecutively and shall specify the purpose for which they are drawn and the person or corporation to whom they are payable.

" 3. It shall be unlawful for a city treasurer or other officer having the custody of city funds to permit the use of such funds for any purpose other than that for which they are lawfully authorized and such funds shall not be paid out except on audit of the board of education and the counter-signature of the comptroller. *  *  * "

Within the limitations of its appropriation (§ 877, subd. 10) the expenditures of school moneys for educational purposes is given to the Board of Education with very limited control by the city authorities. The Board having audited a charge and issued its warrant, the only limitation upon its power is the duty of the Comptroller to see that the funds are used for a lawful purpose, He cannot countersign for an illegal charge or claim. (*Matter of Fleischmann* v. *Graves*, 235 N. Y. 84; *Matter of Poucher* v. *Berry*, 249 N. Y. 16.)

If the Board of Education had violated subdivision 8 of section 875, as above quoted, by awarding a contract for school furniture in excess of $1,000 without advertising for estimates, the contract would be illegal. If it had accomplished the same result by indirection, that is, had so fixed or manipulated the specifications as to shut out competitive bidding or permit unfair advantage or favoritism, the contract likewise would be illegal. (*Brady* v. *Mayor*, 20 N. Y. 312; *Bigler* v. *Mayor*, 5 Abb. N. C. 51.) The principle underlying the law relating to the public letting of contracts through advertisement is stated by Dillon in his work on Municipal Corporations ([5th ed.], vol. 2, § 807) as follows: " When by charter or statute a municipality can only let its contracts to the lowest bidder after advertisement, an implied condition and restriction is placed upon the proceedings of the municipality that the various steps adopted by it to let a contract shall be of such a nature and taken in such form as in good faith to invite competition. * * * The plan and specification are essential to competitive bidding because it is only through their agency that there is a reasonable assurance that all bidders are competing upon the same basis and without favoritism and that no fraud enters into the award."

Examining the specifications we see that they call for school chairs and desks of various descriptions without specifying the quantity desired. For instance, " Bentwood chairs " of certain wood and finish are mentioned; likewise, kindergarten chairs made of birch with saddle-shaped seats, steel kindergarten chairs with all joints electrically welded, making the whole frame a solid unit; office arm chairs are to be constructed of select quartered white oak, and teachers' chairs are to be made of select quartered white oak, with saddle-shaped seat, full framed in box, tapered legs and slat back. The adjustable steel desks and chairs, also the flat top desks, cafeteria and library tables are described in detail as to material, shape

and style. These various items are numbered consecutively from 3600 to 3654, ending with the item calling for blackboards. The instruction to bidders states: "Each proposal must state a certain sum for each item." Under the heading "General Specifications" we find the following:

"5. In the column headed 'Quantity Wanted' is set out an estimate of the quantity which the Board of Education expects to purchase during the year specified; where the space is left blank, it means that the Board is unable to anticipate the quantity of material or equipment under that item which will be required during the year specified and the bidder will be required to furnish all such material or equipment as may be ordered by the Board of Education during the year."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"11. These specifications cover all Public Schools in the City of Buffalo now open or which shall be opened during the year specified, but any contract entered into under these specifications shall not apply to the equipment of new school buildings completed but not opened during the life of the said contract unless the Board of Education shall so determine."

The bids submitted after advertisement consisted of a unit price for each one of the numerical items indicated. It is stated in the brief for the respondent that the contract was not awarded to the lowest bidder upon the specification as a whole, but was considered with a view to the lowest bidder upon each item; that is, the lowest bidder on the item of chairs would be awarded the contract for the chairs, while another bidder, the lowest on desks, might be awarded the contract for the desks. In other words, the specifications called for unit prices on various numbered items, and the lowest bidder upon any item was awarded the contract for that item. The specifications and instructions do not in so many words contain this statement, but as it remains unchallenged

by the appellant or intervener it may be taken as the fact. No quantities being given, and unit prices being called for, the form of the specification likewise indicates that the bids were to be considered as though each item were a separate contract.

The protest made by the Walker Equipment Company, a competitor, stated that it was unable to bid because of the absence of quantities required and time of delivery expected. It also stated six particulars in which the specifications were so framed that chairs and desks could only be furnished by the Randolph McNutt Company, having control of the particular manufactured product. These objections apparently have been brushed aside in this court, as our attention has been directed solely to the objection of quantity and time. The point made is that the quantity of desks, chairs, tables, lockers, bookcases and blackboards required should have been stated, as the price varies with the number to be manufactured and the time of delivery required. No doubt this is true; the Board may have exercised bad business judgment in omitting these requirements, but this did not render the specifications fair for one and unfair for another. They were equally good or bad for all; no favoritism in this particular was shown to the successful bidder. The same difficulties confronted it as faced the Walker Equipment Company. Stating the quantity and the time of delivery might have lowered the price, but omitting to so state did not in and of itself render the method or the resulting contract illegal. The Randolph McNutt Company gave unit prices for the chair and desk items and received the contract; the Walker Equipment Company refused to bid. Calling for unit prices instead of quantity prices in and of itself did not render the specifications unfair, or show any element whereby the Randolph McNutt Company had an advantage in bidding over the Walker Equipment Company. A contract obligating a party to furnish all the materials required during a certain period, deliveries to be made as needed, is a valid and enforceable contract.

(*Edison Electric Illuminating Co.* v. *Thacher*, 229 N. Y. 172.) The relator took the chances in making such a contract which other bidders were unwilling to take. If these specifications were so worded or framed that only desks and chairs manufactured or controlled by the Randolph McNutt Company could be furnished, a more serious question would arise. The legality of such a scheme or plan would be very doubtful.

Our attention has been called to the methods employed by the city of Lockport in purchasing its school supplies. An estimate made up from experience of approximately the quantities required for the coming year is stated in the specifications. This is reasonable as well as sensible. Bidders in such a case have something definite to figure upon, some idea of the amount which may be called for from stock or factory. The result is a lower price. The relator in this case sold furniture to Lockport for less than it sold the same kind to Buffalo. The Board of Education of the latter city furnishes no explanation for its failure to make like estimates for the years 1930 and 1931, covered by the specifications in this case. Experience of past years, together with the plans for the future, must give some intelligent idea to those familiar with educational matters, of the requirements for the coming twelve months. What criticism, however, may be justified by the methods adopted in omitting the item of quantities or any approximation thereof, the omission in the absence of fraud, deception or favoritism does not render the specifications and the contract based thereon illegal. Some statutes require that quantities be stated in advertising for bids. (*Hart* v. *City of New York*, 201 N. Y. 45; *Gage* v. *City of New York*, 110 App. Div. 403; *Matter of Anderson*, 109 N. Y. 554.) The Education Law contains no such provision.

The order should be affirmed, with costs.

O'BRIEN, J. (dissenting). I vote to reverse on the ground that the provisions of subdivision 8 of section

875 of the Education Law were violated in such a material degree as to render the contract illegal. The word " estimate " in this section means, I think, the statement of a reasonably accurate measurement, calculation or computation. In the absence of a publication of an approximate quantity and an approximate time of delivery, estimates cannot be said to have been duly advertised as required by the statute and, consequently, competition in bidding was necessarily limited. The statute prescribes an award not only to the lowest responsible bidder but to such a one as can be ascertained after genuine competition and after advertisement of facts upon which intelligent bids can be based. According to the method of advertising this indefinite contract, favoritism may easily prevail and the purpose of the statute perverted.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG and HUBBS, JJ., concur with CRANE, J.; O'BRIEN, J., dissents in memorandum.

Order affirmed.