Fuld, J.
In this taxpayer’s action, brought pursuant to section 51 of the General Municipal Law, the plaintiff seeks (1) a judgment annulling the resolution of the Board of Trustees of the Village of Freeport which awarded a contract to the defendant Nordberg Manufacturing Co. for the purchase and installation of electric power equipment and (2) either an injunction to restrain the trustees from performing such contract or, in the alternative, damages. In essence, it is the taxpayer’s plaint that the contract specifications were so drawn as to prevent and preclude competitive bidding by manufacturers other than the defendant Nordberg. Following presentation of the plaintiff’s evidence, the trial court, on motion, dismissed the complaint after the defendants had rested without offering any proof on their behalf. The Appellate Division affirmed and we granted permission to appeal. It is our conclusion that the evidence in the record before us establishes, as a matter of law, that judgment should have been rendered in favor of the plaintiff.
The applicable statute, section 103 of the General Municipal Law, provides that a contract for public work, such as the one here in question, is to be awarded “ to the lowest responsible bidder * * * after advertisement for sealed bids The law is based, this court long ago declared, “ upon motives of public economy, and originated, perhaps, in some degree of distrust of the officers to whom the duty of making contracts for the public service was committed. If executed according to its intention, it will preclude favoritism and jobbing, and such was its obvious purpose. It does not require any argument to show that a contract made in violation of its requirements is null and void”. (Brady v. Mayor of City of N. Y., 20 N. Y. 312, 316-317.) Moreover, once a contract is proved to have been awarded without the required competitive bidding, a waste of public funds is presumed and a taxpayer is entitled to have the contract set aside without showing that the municipality suffered any actual injury. (See American La France & Foamite Corp. v. City of New York, 156 Misc. 2, 4, affd. 246 App. Div. 699; *209 Rodin v. Director of Purch., 38 Misc 2d 362, 364; Grace v. Forbes, 64 Misc. 130, 139; see, also, Tinston v. City of New York, 17 A D 2d 311, 312-313, affd. 13 N Y 2d 850; 18 McQuillin, Municipal Corporations [3d ed. rev.], pp. 53-58.) It is sufficient in such a situation that the public ‘ ‘ has been deprived of the protection which the law was intended to afford.” (Matter of Emigrant Ind. Sav. Bank, 75 N. Y. 388, 396.)
If a municipality awards a contract without advertising for bids, when required, the contract would, concededly, be illegal. And, as this court pointedly remarked in Matter of McNutt Co. v. Eckert (257 N. Y. 100, 104), “ the contract likewise would be illegal ” if the municipality “ had accomplished the same result by indirection, that is, had so fixed or manipulated the specifications as to shut out competitive bidding or permit unfair advantage or favoritism”. (See, also, Smith v. Syracuse Improvement Co., 161 N. Y. 484, 489-490; Grace v. Forbes, 64 Misc. 130, supra.) Such unlawful manipulation apparently occurred in this case.
In 1960, the Village of Freeport sought to supplement its power plant and advertised for bids for the purchase and installation of a 3,500 kilowatt generator. The specifications called for a two or four-cycle engine of no particular cylinder arrangement, to be tested at the factory. Early in 1961, two bids were received, one from the Enterprise Engineering and Machinery Co. and the other from the defendant Nordberg. They differed materially in both engine design and price. Enterprise offered a four-cycle “ V ” engine with a factory test for $615,685, Nordberg a two-cycle “ in line ” engine for $673,840, but, contrary to the specification requirement, without a factory test. The Village Water and Light Commission, the body which initially passed on the matter, considered both offers and, following the recommendation of its engineer, urged the Board of Trustees to accept Enterprise’s lower bid.
However, in March of 1961, a new Mayor and two new trustees were elected and, at the request of the former, action on the bids was deferred so as to enable the newly elected officials to pass on them when they assumed office. One of the earliest acts of the reconstituted Board of Trustees was to summarily replace the members of the Water and Light Commission. The old commissioners challenged their dismissal in the courts and *210 ultimately obtained an order directing their reinstatement. (Matter of Amatulli v. Sweeney, 33 Misc 2d 324, affd. 17 A D 2d 631.) However, before such reinstatement was effected, the chairman’s term expired and a new chairman was appointed in his place.
Some months later, the Board of Trustees accepted the Nordberg bid and awarded the contract to that company.[1] Enterprise thereupon brought suit to rescind the award and succeeded in having the court set the contract aside on the ground that it did not conform to the specifications under which it had been awarded; the trustees were directed “ to award the contract, as required by law ”.
The board did not, however, follow this direction. It neither awarded a contract to Enterprise, the low bidder, nor took any action at all on the bids. Instead, the Mayor requested the new chairman of the Water and Light Commission to prepare other specifications for the generator, and this, the record reveals, the chairman proceeded to do with the active assistance of a representative of the defendant Nordberg.
It is against this background that the new specifications must be viewed and appraised. The changes which were made in them were substantial, with the result that only one manufacturer, the defendant Nordberg, could or was expected to meet them. Thus, the new specifications called for a 5,000 kilowatt generator of a design identical to that submitted by Nordberg in its earlier, invalidated bid for the contract, and required that a successful bidder must have constructed at least three similar units showing satisfactory operating experience. These specifications were submitted by the chairman for the approval of his colleagues on the Water and Light Commission but by then a majority of the commissioners no longer felt that the expansion of the Freeport power plant was an economical venture and, accordingly, objected to the acquisition of any new generator at all. Nevertheless, the Board of Trustees, apprised though they were of the commission’s conclusion, accepted the specifications as drawn and advertised for bids.
As had been anticipated, Nordberg was the only bidder and it was speedily awarded the contract.
*211 • It is indisputable that other manufacturers did not customarily produce generators of the type and design specified. The trial judge regarded this evidence as tending to establish only that “ other manufacturers are not at the present time constructing the equipment required by the specifications. There is no showing that they could not do so if they felt so inclined”. This patently reflected a far too restrictive view of the conclusion to be drawn from the uncontradicted facts. Although the court sustained defense objections to questions expressly designed to establish that no manufacturer other than Nordberg could satisfy the specification that the successful bidder must be one who has had satisfactory operating experience with three similar machines, the proof adduced by the plaintiff leaves no doubt that Nordberg was the only manufacturer who could make such a showing.
We do not mean to suggest that specifications for public projects are illegal merely because they tend to favor one manufacturer over another. More must appear in order to render the specifications and the contract based thereon illegal (see Matter of McNutt Co. v. Eckert, 257 N. Y. 100, 107, supra; Hopkins v. Hanna, 135 Misc. 750), since a particular product, that is, one marketed by only one manufacturer, may be required in the public interest. However, an objectionable and invalidating element is introduced when specifications are drawn to the advantage of one manufacturer not for any reason in the public interest but, rather, to insure the award of the contract to that particular manufacturer. (See American La France & Foamite Corp. v. City of New York, 156 Misc. 2, affd. 246 App. Div. 699, supra; see, also, International Meters v. City of New York, 47 Misc 2d 924; Grace v. Forbes, 64 Misc. 130, supra.)
The record fails to explain or justify inclusion in the specifications of a distinctive design customarily employed by but one prospective bidder. Other manufacturers could, of course, construct the machine but only at a prohibitive cost and, hence, not at a competitive price. In a very real sense, and for all practical purposes, the competitive bidding required by the statute was effectively eliminated. Indeed, this impermissible result was assured by the specification requirement that the successful bidder must have had successful operating experience with at least three similar units. Such a scheme or plan is illegal in *212 the absence of a clear showing that it is essential to the public interest. (See Matter of McNutt Co. v. Eckert, 257 N. Y. 100, 107, supra; American La France & Foamite Corp. v. City of New York, 156 Misc. 2, 4, affd. 246 App. Div. 699, supra.) No such showing was made here. In fact, as indicated above, the defendants elected to have the case decided without submitting any opposing evidence.
Therefore, we can only find that there was a studied and continuing design on the part of the village and its officers to favor the defendant Nordberg. When the attempt to award the first contract to Nordberg failed, the record permits no inference other than that the new specifications were so slanted as to make impossible a bid on the second contract by any other manufacturer. It follows that a case was made out entitling the plaintiff taxpayer to the relief sought and, accordingly, the trial court had no alternative but to grant judgment in favor of the plaintiff.
The order appealed from should be reversed, with costs in all courts, and the case remitted to the Supreme Court, Nassau County, for the entry of judgment in favor of the plaintiff in accordance with this opinion.
Chief Judge Desmond and Judges Dye, Van Voorhis, Burke, Scileppi and Bergan concur.
Order reversed, etc.

. We note, in passing, that prior to doing this an engineering firm which the hoard had consulted had recommended that neither bid be accepted.