The **BOARD OF EDUCATION CENTRAL SCHOOL DISTRICT NO. 2 OF** the **TOWNS OF BEDFORD ET AL.,** Plaintiff-Appellant,

v.

**AETNA CASUALTY AND SURETY CO.,** Defendant-Appellee.

No. 24, Docket 35086.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1971.

Decided Dec. 15, 1971.

Robert N. Shiverts, New York City (Louis E. Yavner, New York City, of counsel), for plaintiff-appellant.

David A. Trager, New York City (Max E. Greenberg and George N. Toplitz, New York City, Max E. Greenberg, Trayman, Harris, Cantor, Reiss & Blasky, New York City, of counsel), for defendant-appellee.

Before MOORE, SMITH and HAYS, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by the Board of Education Central School District No. 2, of the Towns of Bedford, New Castle, North Castle and Pound Ridge (the Board), from a judgment granting the Aetna Casualty and Surety Co.'s (Aetna) motion for summary judgment dismissing the complaint and denying the Board's cross-motion for summary judgment.

The sole issue on this appeal is whether the District Court was correct in stating that Aetna could not be liable on any cause of action brought by the Board because New York law absolves a surety of all liability on a performance bond once it has been determined that the principal's construction contract was illegal because it was not let in conformity with the New York State competitive bidding statute.[1] For the reasons stated below, we find that the District Court was in error. The judgment is therefore reversed insofar as the Board's complaint was dismissed and the case is remanded for proceedings consistent with this opinion.

*The Facts*

In November 1963 the Board published an advertisement requesting bids for the general construction and site work for its Middle School.[2] Six bids were

---

1. N.Y.General Municipal Law, McKinney's Consol.Laws, c. 24, § 103(1).

2. This procedure was in conformity with N.Y.General Municipal Law § 103(2).

submitted. The three lowest bids were as follows:

| Contractor | Base Bid |
|---|---|
| Rand Construction Co. | $2,276,800 |
| Fabrizio & Martin, Inc. | $2,326,900 |
| Walter A. Stanley Construction Co. | $2,549,000 |

The contract was awarded to the Rand Construction Co. in January 1964. Subsequently, the Rand Co. asked to withdraw its bid because it had made an error in computation. The Board consented.

The contract was then awarded to Fabrizio & Martin, Inc. (Fabrizio), the next lowest bidder. However, Fabrizio also discovered a mathematical error in its computation, which it claimed had been understated in the amount of $171,000. Fabrizio also asked either to withdraw or correct its bid.

Fabrizio's request was followed by a series of meetings, letters and telephone calls between representatives of Fabrizio and the Board during which it was decided to change the plans and specifications to compensate for the error. The changes were made with the consent of the Board, the Board's attorney, the architect and Fabrizio. To effectuate the changes, a change order was signed on March 17, 1964. The Board, however, did not submit the change order to the State Education Department for approval, as it was required to do, until June 1967.

At the same time that the change order was signed, the Board and Fabrizio entered into a general construction contract which incorporated the change order. Pursuant to the contract, Fabrizio as principal, and Aetna as surety, executed a performance bond and delivered it to the Board as obligee. Thereafter Fabrizio commenced work on the school. The pertinent provisions of the bond in issue before us are:

"Whereas, Contractor has by written agreement dated March 17, 1964 entered into a contract with Owner for general construction and site work for the Middle School Bedford, New York in accordance with drawings and specifications prepared by the Architects Collaborative, Cambridge, Mass. *which contract is by reference made a part hereof* and is hereinafter referred to as the Contract.

"Now, Therefore, the Condition of this Obligation, is such that, if the Contractor shall promptly and faithfully perform said contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect." (emphasis supplied)

On March 23, 1965, as a result of a dispute between the Board and Fabrizio, a supplemental agreement was executed. Aetna, as surety, took part in the discussions leading up to this agreement and consented to it.

About one year later, Fabrizio notified the Board of its intention to cease further construction of the school. The Board responded by declaring Fabrizio in default. Aetna was notified of the default and was requested to make arrangements to complete the work. The request was refused. Subsequently, the Board relet the unfinished portions of the work to other contractors who completed the school.

*Prior Proceedings*

Fabrizio commenced an action against the Board in the Southern District of New York, Docket No. 66 Civ. 2935, seeking to recover damages for alleged breach of contract, detention of materials and for the value of services rendered in the construction of the school. The complaint stated six causes of action. Each one of them was premised on an alleged breach of contract or on a theory of *quantum meruit.* Prior to serving or filing its answer the Board moved to stay the action pending arbitration. Argument on this motion was before Judge McLean, United States District Judge for the Southern District of New York.[3]

---

3. Fabrizio & Martin, Inc. v. The Board of Education Central School District No. 2, etc., Docket No. 66 Civ. 2935 Motion No. 86 (S.D.N.Y. Feb. 21, 1967).

In ruling on this motion, Judge McLean found that the effect of the change order on the original plans and specifications was such that the Board should have requested new bids on what was essentially a new contract in order to conform to the requirements of the New York State competitive bidding statute. Since all would-be bidders were denied an opportunity to submit their bids, the contract was held to be illegal and thus invalid. The Board's motion to compel arbitration was therefore denied on the ground that the arbitration clause in the invalid contract was also invalid. No appeal was taken from this decision. The decision is unreported but is set forth in the appellant's appendix, 48a–73a.

After Judge McLean's decision was rendered, the Board served its answer to Fabrizio's complaint. The answer contained seven affirmative defenses and two counterclaims. In pertinent part, the Board's defenses alleged the invalidity of the contract and cited Judge McLean's decision. One counterclaim sought recovery of all money paid to Fabrizio and the other sought damages caused by Fabrizio's breach of contract. The Board then moved for summary judgment dismissing the complaint and granting the relief sought in the counterclaims. Argument on this motion was presented to Judge Ryan, District Judge, for the Southern District of New York.[4]

In dismissing Fabrizio's complaint, Judge Ryan first stated that he agreed with Judge McLean's ruling that the contract, having been awarded in violation of the New York State competitive bidding statute, was invalid. He then held, on the basis of the New York Court of Appeals decision in Gerzof v. Sweeney, 22 N.Y.2d 297, 292 N.Y.S.2d 640, 239 N.E.2d 521 (1968), that Fabrizio could not base any recovery against the Board on the invalid contract whether it alleged breach of contract or *quan-*

*tum meruit* but that the Board was entitled to recover such damages as it might establish.

A trial was ordered to determine the extent of the Board's recovery. This action is presently pending. Fabrizio appealed from the dismissal of three of its six causes of action. The appeal was dismissed because it was not an appeal from a final order.

With respect to the Board's Fourth and Fifth counterclaims, which Judge Ryan characterized as the "crux" of the litigation, he held that "Under the philosophy of Gerzof v. Sweeney, *supra,* while defendant may not under the Fourth counterclaim recover the entire amount it has so far paid Fabrizio, it may well recover from Fabrizio some of this money under the *'Gerzof'* guidelines," but he also held that the Court ". . . would be loath here to compel the repayment by plaintiff of over two million dollars without an inquiry into the merits." (*Fabrizio, supra,* 290 F.Supp. at 956).

Thus far the Fabrizio-Board litigation has produced two decisions (1) arbitration has been denied because the construction contract containing the arbitration clause was illegal; and (2) Fabrizio cannot recover from the Board under the illegal contract. Still open for decision is Fabrizio's liability to the Board. It was to cover any such potential liability that the Board required and Fabrizio sought and paid for Aetna's monetary guarantee of prompt and faithful performance.

### The Present Action

The Board, seeking to hold Aetna liable on its performance bond, commenced the instant action in the Westchester County Supreme Court of New York. A petition by Aetna pursuant to 28 U.S.C. § 1332 to remove the action to the Federal Court was granted. As noted, the Board's complaint was dismissed on Aetna's motion for summary judgment on

4. Fabrizio & Martin, Inc. v. Board of Education Central School District No. 2, 290 F.Supp. 945 (S.D.N.Y.1968).

the theory that Aetna, as surety, was absolved of all liability because the construction contract was invalid. This ruling is at issue here.

## The Trial Court's Opinion

The Trial Court on Aetna's motion for summary judgment concluded that since the March 17, 1964 contract between the Board and Fabrizio "was null and void, the surety Aetna is not liable on a performance bond of that same contract." The Board of Education, Central School District No. 2, etc., v. Aetna Casualty and Surety Co., Docket No. 68 Civ. 1162 (S.D.N.Y. May 11, 1970). For New York law, the Court relied on Village of Medina v. Title Guaranty & Surety Co., 152 App.Div. 307, 136 N.Y.S. 786 (4th Dept. 1912), aff'd, 211 N.Y. 24, 104 N.E. 1118 (1914) and Kent v. Thornton, 179 Misc. 593, 39 N.Y.S.2d 435 (Sup.Ct. Chautauqua County), aff'd, 265 App. Div. 904, 38 N.Y.S.2d 573 (4th Dept. 1942), and decisions of courts in other States. The Court rejected *Gerzof* because the *Gerzof* theory of liability did not affect Aetna, as surety, in any way.

## Gerzof v. Sweeney

This case must be considered in relation to Judge Ryan's decision in the action brought by Fabrizio against the Board and the counterclaims by the Board against Fabrizio. In an endeavor to ascertain applicable New York law, Judge Ryan relied heavily on Gerzof v. Sweeney, *supra*.

*Gerzof* was a taxpayer's action against the Mayor of the Village of Freeport to annul a contract with Nordberg Manufacturing Co. for the purchase and installation of electric power equipment, primarily a generator. Because of violations of New York's competitive bidding statute, the contract was held to have been illegal. The Village Board of Trustees had awarded to Nordberg the contract for a larger and more expensive generator based on specifications drawn by Nordberg which only Nordberg could fulfill. The Court of Appeals held the contract illegal and directed that judgment be entered in plaintiff's favor. 16 N.Y.2d 206, 264 N.Y.S.2d 376, 211 N.E. 2d 826 (1965).

On the trial with respect to damages, the trial court decreed that the generator remain the property of the Village and that the Village recover from Nordberg the purchase price of the generator, $757,625.

The Appellate Division modified the judgment to the extent of giving Nordberg the option of recovering the generator upon posting a bond to indemnify the Village for damages incurred thereby. On review by the Court of Appeals that court was "concerned only with the question of remedies" (22 N.Y.2d p. 302, 292 N.Y.S.2d p. 642, 239 N.E.2d p. 522) in a case "where an illegal and void contract for public work, entered into in defiance of the competitive bidding statute (General Municipal Law, § 103) has been performed in full on both sides." (22 N.Y.2d p. 304, 292 N.Y.S.2d p. 643, 239 N.E.2d p. 523).

The Court then proceeded to fashion relief based upon equitable principles, saying:

> "Ordinarily, the application of the law to particular cases may not, of course, vary with the sums involved. But we must recognize that the rule with which we are concerned has unique aspects that make it appropriate for us to take into account the severity of its impact in cases as extreme as the present one. The purposes of our competitive bidding statutes may be fully vindicated here without rendering so Draconian a decree as to subject the defendant Nordberg to a judgment for over three quarters of a million dollars. Justice demands that even the burdens and penalties resulting from disregard of the law be not so disproportionately heavy as to offend conscience." (P. 306, 292 N.Y.S.2d p. 645, 239 N.E.2d p. 524).

A similar approach is justified in this *a fortiori* case where the amount involved is over two million (not three-quarters of a million) dollars. In *Ger-*

zof the wrong was done to the Village of Freeport by the connivance of Nordberg and the Village officials; in our case to the taxpayers by the connivance of Fabrizio and the Board. The New York Court of Appeals resorted to a "remedy, lying well within the domain of equity" (22 N.Y.2d p. 307, 292 N.Y.S.2d p. 646, 239 N.E.2d p. 525) and decreed that the damages recoverable from Nordberg should be measured by the difference in price between the smaller generator offered by Nordberg's competitor, namely, $615,685 and the Nordberg generator, namely, $757,625 plus $36,696, the installation cost difference—in other words, the additional expense to the Village. While the question of the principal's liability, if any, under *Gerzof*, is pending but undecided, it would be premature at this juncture for this Court to try to set anticipatory "guidelines" until the facts are fully developed upon a trial on the merits.

### Aetna's Liability

Judge Ryan held that in the Fabrizio-Board action that ". . . insofar as the Board seeks to recover damages incurred by it in being compelled to complete the school, it may well appear at trial that this is an item of damage recoverable under 'Gerzof'," and that ". . . the issues remaining for determination are the damages which the Board suffered as a direct consequence of the illegal contract, including but not limited to the items enumerated by the Court of Appeals in 'Gerzof'." (290 F.Supp. p. 956). In other words, until a judgment, if any, is rendered for damages, if any, against Fabrizio and in favor of the Board, there is no way of determining whether the condition of the surety bond has been met. It is abundantly clear from Judge Ryan's decision that he did not hold that Fabrizio could not under any circumstances be liable to the Board for damages. Damages could only have been incurred in connection with the construction of the school and it was for proper performance of this construction work that Aetna stood surety. Nor did the Judge hold that the Board's counterclaims must be dismissed although the contract's invalidity prevented Fabrizio from recovering. He held quite to the contrary. Had the invalidity of the contract prevented the Board from obtaining any recovery for damages against Fabrizio, Aetna's contention might have breater merit.

The contract now before us is Aetna's surety bond. Therein the obligation was to insure that Fabrizio would "faithfully perform said contract."

Judge Ryan, relying on *Gerzof*, directed a trial in the Fabrizio-Board action for the determination of "the damages which the Board suffered as a direct consequence of the illegal contract." (*Fabrizio, supra,* 290 F.Supp. at 956). Although this decision removes Aetna's premise of no liability under a void contract, it does not establish the nature or extent of the damages, if any, recoverable by the Board against Aetna. Such a determination can only be made after full development of the facts relating to the underlying equities, *vis-a-vis* the Board and Aetna.

Accordingly, the action is remanded to the District Court with instructions to consolidate it with the pending Fabrizio-Board action, and making Aetna an additional party with respect to the Board's counterclaim against Fabrizio so that all the facts bearing upon the rights of the parties may be adduced.