In the Matter of ALLEN GROUP, INC. (ALLEN TESTPRODUCTS DIVISION), Appellant-Respondent, v PATRICIA B. ADDUCI, as Commissioner of the New York State Department of Motor Vehicles, et al., Respondents-Appellants.

Third Department, January 8, 1987

**APPEARANCES OF COUNSEL**

*Morton J. Getman (Steven U. Teitelbaum* of counsel), for appellant-respondent.

*Robert Abrams, Attorney-General (Richard J. Dorsey* and *Nancy A. Spiegel* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

KANE, J.

The Federal Clean Air Act requires all States, including New York, to submit a State implementation plan (hereinafter SIP) to enforce applicable air quality standards in areas where Federal standards are not being met *(see,* 42 USC § 7410). New York's SIP was submitted to the Federal Government on November 5, 1979. As originally submitted, the SIP required, *inter alia,* that a mandatory vehicle emission inspection pro-

gram be provided for the nine-county area comprising the New York metropolitan area (hereinafter NYMA).

Subsequently, the State decided that the best available system of vehicle emission inspections could be achieved through the use of a "sole source" contract to supply vehicle emission analyzers to the NYMA. The sole source concept means that one equipment vendor, through the competitive bidding process, will win the exclusive right to supply and maintain the required emission analyzers at each inspection station designated to determine the content of emissions in the exhaust of gas-powered vehicles. The contract to supply the emission analyzers was put up for competitive public bidding in November 1979 and the successful bidder was Hamilton Test Systems (hereinafter Hamilton). The terms of the contract required Hamilton to supply emission analyzers from 1980 to 1986 to some 4,300 inspection station operators in the NYMA.*

On November 27, 1985, in order to effect compliance with the mandates of the applicable national ambient air quality standards by December 31, 1987 in the NYMA (see, 42 USC § 7502), the Department of Motor Vehicles (hereinafter DMV), in conjunction with the Department of Environmental Conservation (hereinafter DEC), issued a new "request for proposal" (hereinafter RFP). The RFP invited sealed bids for the exclusive right to "provide, modify and maintain" for the NYMA the requisite emission analyzers for the next six-year period between January 1, 1987 and December 31, 1992. Bidders were solicited to submit, *inter alia,* prices for selling or leasing new emission analyzers to the inspection stations or they could bid on modifying the existing Hamilton emission analyzers to enable them to meet new Federal standards. Alternatively, bidders could submit a bid for both modifying existing equipment or providing new equipment.

In addition, the sole source concept would be continued under the new contract. According to the RFP, the contract is to be awarded to the lowest responsible bidder who met the terms that best promoted the public interest. Accordingly, each bid was to be submitted in four separate parts for evaluation by four separate committees who make recommendations to respondents for their ultimate decision in the award of the contract.

---

* The original Hamilton emission analyzer has been modified and, since 1984, approximately 100 newer emission analyzers have been furnished by Hamilton to inspection stations.

Prior to the issuance of the RFP, and in November 1985, petitioner, a Delaware corporation manufacturing emission analyzers, began writing to DMV in order to give its views on how the new contract should be formulated. Petitioner argued against the sole source concept claiming that inspection stations should have the option of choosing equipment from different manufacturers. This suggestion was considered by DMV and later rejected. Petitioner also requested that the Hamilton emission analyzers, along with pertinent data concerning them, be made available for inspection by bidders. In response to this request, petitioner was advised that arrangements had been made to have the two models of Hamilton emission analyzers made available for inspection. However, because much of the technical specifications for the emission analyzers were considered trade secrets and the property of Hamilton, they were, in effect, not made available for study and inspection.

On December 18, 1985, after the issuance of the RFP, a bidders conference was held in order to discuss various questions concerning the RFP, followed by petitioner's submission of numerous questions to DMV for its response in accordance with the terms of the RFP. While DMV answered some of the questions extensively, its response to a great many of them was that answers were not available from the State and could not be obtained from Hamilton. On February 26, 1986, as provided for in the RFP, one of petitioner's engineers tested the two Hamilton emission analyzers which had been made available for inspection.

On February 28, 1986, petitioner submitted its proposal to supply new emission analyzers. The only other potential bidder to submit a bid, Hamilton, submitted a proposal to supply new equipment and to modify the existing equipment. Bids were opened March 3, 1986. On March 13, 1986, petitioner commenced the instant proceeding, seeking an order directing respondents to withdraw the RFP and to redraft the RFP to provide bidding on new emission analyzers only and directing that the sole source requirement of the RFP be removed.

In support of its request, petitioner submitted expert opinion to the effect that petitioner lacked necessary information to formulate a bid on the modification aspect of the contract. Respondents' opposition to any preliminary injunction is founded on the necessity of expeditiously implementing the vehicle inspection program. Following oral arguments on March 21, 1986, Supreme Court issued its decision dated May

12, 1986 enjoining respondents from further action under the RFP, leaving them the option of withdrawing and redrafting the RFP or supplying petitioner with the necessary information to make an informed bid. With respect to the sole source requirement, the court found that it was reasonable and in the best interest of the public. These cross appeals ensued.

■ Initially, we must address petitioner's attack upon the "sole source" or single supplier procedure utilized by respondents in the award of its 1980 contract, for in our view, therein lie the seeds of this litigation. The record demonstrates that DMV and DEC devoted time, energy and extensive thought and consideration on the issue of the sole source concept before concluding that a uniform system of vehicle emission inspection was desirable and reasonable. Although their expectations may not have been realized and many of the serious problems facing DMV and DEC in achieving timely compliance with the requirements of the Federal Clean Air Act result, in part, from that choice of procedures, it is not for this court to substitute its judgment for that of an administrative agency, nor disturb its determination absent a finding that the decision was arbitrary and capricious or lacking a rational basis (see, Jones v Beame, 45 NY2d 402, 407; Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508, 520).

■ Additionally, we find no violation of the provisions of State Finance Law § 174, as urged by petitioner, because the provisions of that section do not apply in this proceeding. Nothing is being purchased by the State; it is merely granting a concession, after competitive bidding, to one supplier from whom individual inspection station operators may purchase or lease the necessary equipment which has been approved by respondents as meeting Federal standards. We recognize that six years later, request for bids to update and modify existing equipment do provide a competitive advantage to the initial supplier. However, this advantage does not make the present competition illegal. There is no showing that a particular manufacturer is being favored for any corrupt or unfair purpose. The RFP merely offers an opportunity for the individual service station operator to elect to update existing equipment or replace it with a newer or improved product. Such a decision is, essentially, an evaluation of the respective merits of rather sophisticated computerized scientific equipment to which decision is applied the economic realities of sound business practice (see, Matter of Burroughs Corp. v New

*York State Higher Educ. Servs. Corp.,* 91 AD2d 1078, 1079, *lv denied* 58 NY2d 609).

■ Accordingly, we conclude that respondents' bidding procedures are legally permissible, since the bids on either modification or new equipment are severable and not mandatory. Moreover, there are considerations of public interest when viewed from the circumstances of the over 4,000 inspection station operators who face the choice referred to, as well as the severe sanctions to be imposed upon the State for failure to meet Federal requirements *(see, Gerzof v Sweeney,* 16 NY2d 206, 211-212). Finally, the record demonstrates that respondents have made a good-faith effort to comply with the requests for information about existing equipment, and that the existing injunction unnecessarily interferes with the implementation of respondents' RFP and should be lifted in its entirety.

MAHONEY, P. J., WEISS, MIKOLL and HARVEY, JJ., concur.

Judgment reversed, on the law and the facts, without costs, and petition dismissed.