## UNISYS CORPORATION *v.* DEPARTMENT OF LABOR ET AL.
## (14330)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued October 2—decision released December 31, 1991

*William J. Egan,* with whom, on the brief, was *Thomas R. Legenhausen,* for the appellant (plaintiff).

*Richard Blumenthal,* attorney general, and *Thomas Yasensky,* assistant attorney general, with whom, on the brief, was *Susan I. Hellerman,* assistant attorney general, for the appellees (named defendant et al.)

*J. Charles Mokriski,* with whom was *Antonio B. Braz,* for the appellee (defendant International Business Machines Corporation).

BERDON, J. The principal issue in this case is whether the plaintiff, Unisys Corporation, is entitled to an evidentiary hearing to determine whether it has standing to enjoin the state from awarding a purchase contract. The plaintiff appeals from the trial court's decision granting the defendants' motion to dismiss. We reverse and remand for further proceedings.

The relevant facts are as follows. The defendant department of administrative services, on behalf of the named defendant, the department of labor (collectively hereinafter referred to as the state), issued two requests for proposals (RFPs) for the purchase of computer equipment, software and services.[1] The plaintiff

[1] The plaintiff alleges in its complaint that the two RFPs issued specified the following: RFP 105 sought bids for "the purchase of certain computer equipment, software, system support services and other services described as: 'the purchase of an IBM 9121-320, related peripherals and software; system support to convert/modify/install GUIDE (Public Domain Software) using DB/2 as the data base platform; system support within the implementation of FARS; system support to convert UNISYS application onto the IBM platform; and other related services.' " RFP 110 sought "proposals for some of the services included in RFP 105 in connection with the purchase on installation of IBM equipment and software pursuant to RFP 105."

alleges in its complaint that the RFPs were not based upon competitive bidding as required by General Statutes § 4a-57[2] and that it was prevented from submitting a bid because the RFPs requested "single source" specifications—that is, the RFPs' specifications were limited to the make, model number and particular equipment and software available only from International Business Machines Corporation (IBM), which was also made a party defendant in this action. The plaintiff further alleges in its complaint that it manufactures and supplies computer equipment and software equivalent to that of IBM, that it currently supplies the state with computer equipment and software, that the RFPs do "not permit proposals based upon equivalent computer equipment or software made by other manufacturers" and, therefore, that it did not submit a bid. The plaintiff also alleges that the state engaged in acts of favoritism to IBM that undermined the object and integrity of the competitive bidding process. Specifically, the plaintiff alleges that the state drafted the RFPs in reliance on information it received from IBM so that it would favor IBM over other vendors. Further, the plaintiff alleges that the state provided information to IBM that was relevant to the RFPs, but that information was not provided to other vendors who received the RFPs.

On the basis of these allegations, the plaintiff sought injunctive relief to prevent the state from either opening and examining proposals submitted in response to the RFPs or entering into a contract based on the RFPs. The plaintiff also requested "further relief as is just and proper."

[2] General Statutes § 4a-57 (a) provides in pertinent part: "All purchases of, and contracts for, supplies, materials, equipment and contractual services, except gas, water and electric light and power services, and purchases and contracts made pursuant to the provisions of subsection (c) of this section shall be based, when possible, on competitive bids."

The trial court, *O'Neill, J.*, granted the defendants' motion to dismiss the complaint[3] on the grounds that the plaintiff was not aggrieved in a contested case and had "never [been] in a contested case," and that the plaintiff had not exhausted its administrative remedies under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. In essence, the trial court found that the plaintiff lacked standing because it had not submitted a bid pursuant to the RFPs. The trial court also found that there were no facts to support "favoritism" as alleged in the second count of the complaint. The trial court did not address the taxpayer's standing issue raised by the plaintiff, or the state's claim of sovereign immunity. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023. We conclude that the plaintiff should have been given an evidentiary hearing to afford it the opportunity to prove that it does have standing. Accordingly, we reverse the judgment of dismissal and remand the case for further proceedings.

---

[3] In conjunction with this action, on November 29, 1990, the plaintiff obtained an ex parte temporary order from the court, *Maloney, J.*, restraining the state from entering into a contract or purchase based upon the RFPs. The court issued an order directing the defendants to appear on December 10, 1990, to show cause why a temporary injunction should not issue. On December 7, 1990, the state filed both an objection to the temporary injunction and the motion to dismiss, claiming the plaintiff lacked standing to bring the action. IBM orally joined in this motion. The state also argued that the plaintiff's suit was barred by the doctrine of sovereign immunity. The court, *O'Neill, J.*, continued the hearing on the temporary injunction to December 18, 1990; it also ordered that the temporary restraining order be continued until that date and stated that it would consider the motion to dismiss during the interim. On December 18, 1990, the trial court granted the motion to dismiss on the ground that the plaintiff lacked standing, and denied the plaintiff's request for an evidentiary hearing to prove its allegations of standing. Accordingly, the plaintiff, for the purposes of this appeal, relies on the allegations of its complaint and the affidavit of Joseph M. Robens, its branch manager, which was submitted in support of its request for injunctive relief and in opposition to the motion to dismiss.

It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. " 'Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.' " *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a 'personal stake in the outcome of the controversy'; *Shaskan* v. *Waltham Industries Corporation,* 168 Conn. 43, 49, 357 A.2d 472 (1975) . . . provides the requisite assurance of 'concrete adverseness' and diligent advocacy." (Citations omitted in part.) *Maloney* v. *Pac,* 183 Conn. 313, 320–21, 439 A.2d 349 (1981).

The plaintiff maintains that, in this case, it has sufficiently alleged standing in its pleadings on one of two grounds, either as a potential competitor aggrieved by irregularities in the bidding process, or as a taxpayer. It seeks the opportunity to establish such standing at an evidentiary hearing. We agree that such a hearing should be held.

The plaintiff's standing as a competitor injured by the bidding process flows from our holding in *Ardmare*

*Construction Co.* v. *Freedman,* supra, 503, where we held that the decision to reject a bid or to award a contract is not a contested case under the Uniform Administrative Procedure Act and, therefore, does not permit a challenge to the state's decision by way of an administrative appeal. Nevertheless, we went on to reaffirm our holding in *Spiniello Construction Co.* v. *Manchester,* 189 Conn. 539, 544, 456 A.2d 1199 (1983), that the "[c]ourts will intervene . . . where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of [the] . . . officials." *Ardmare Construction Co.* v. *Freedman,* supra, 504–505.

Although in *Spiniello Construction Co.* the plaintiff who sought the injunction was a bidder, in *Ardmare Construction Co.* we did not tailor the remedy solely to that class of persons. Indeed, we quoted with approval from *Scanwell Laboratories, Inc.* v. *Shaffer,* 424 F.2d 859, 864 (D.C. Cir. 1970), the following: " '[T]he public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit *brought by one who suffers injury* as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a "private attorney general." ' " (Emphasis added.) *Ardmare Construction Co.* v. *Freedman,* supra, 504. In *Ardmare Construction Co.,* we pointed out that the scope of our holding in *Spiniello Construction Co.* was "to strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public." *Ardmare Construction Co.* v. *Freedman,* supra, 505. In the present case, if the plaintiff establishes that it would have submitted a bid if not

for the single source specifications, its status would, for purposes of standing, be the equivalent of one who had submitted a bid.[4] See *Gerzof* v. *Sweeney,* 16 N.Y.2d 206, 211 N.E.2d 826, 264 N.Y.S.2d 376 (1965); 10 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1990) § 29.49.

The plaintiff also claims it has standing because it is a taxpayer. See *Ardmare Construction Co.* v. *Freedman,* supra, 505 n.12; *Austin* v. *Housing Authority,* 143 Conn. 338, 122 A.2d 399 (1956). The plaintiff, however, merely alleges in its complaint and in the affidavit of Robens that it is a federal and state taxpayer, but fails to allege in what manner it is harmed as a taxpayer. "A taxpayer is not entitled to an injunction restraining such illegal conduct as the plaintiff claims unless he has suffered a pecuniary or other direct loss in that capacity." *Cassidy* v. *Waterbury,* 130 Conn. 237, 245, 33 A.2d 142 (1943). Therefore, we do not reach this issue of whether it could have standing as a federal or state taxpayer.

Accordingly, we conclude that the plaintiff in this case would have standing if it is able to prove that it would have submitted a bid on the RFPs but for the single source specifications, that its equipment and software is equivalent to that specified in the RFPs and that the restrictions of the single source specifications undermined the object and integrity of the competitive bidding process, or that there was proof of favoritism.

With respect to this issue of standing—that is bidder injury—questions of fact were raised and the trial court should have allowed an evidentiary hearing. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that

[4] Robens' affidavit stated in part that the plaintiff "would submit a proposal in response to RFP 105 and RFP 110 but for the fact that RFP 105 specifies IBM equipment only, by make and model number, and does not permit functionally equivalent products, or even specify what functions are required."

a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. The trial court erred in not holding such a hearing." *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983).

We further note that although the governing statute in this state does not specifically permit single source specifications, it does provide that contracts for purchase "be based, when possible, on competitive bids." General Statutes § 4a-57.[5] Under § 4a-57, RFPs are not necessarily illegal merely because the specifications of the RFPs can be met by only one vendor. As the New York Court of Appeals pointed out in *Gerzof,* "[m]ore must appear in order to render the specifications and the contract based thereon illegal . . . since a particular product, that is, one marketed by only one manufacturer, may be required in the public interest. However, an objectionable and invalidating element is introduced when specifications are drawn to the advantage of one manufacturer not for any reason in the public interest but, rather, to insure the award of the contract to that particular manufacturer." (Citations omitted.) *Gerzof* v. *Sweeney,* supra, 211. In this case, the plaintiff alleges that it manufactures and supplies computer equipment and software equivalent to those specified in the RFPs and that the RFPs were written in a manner to favor IBM over other vendors.

The defendants raise two additional claims pertaining to the jurisdiction of the court. First, the state claims that this court lacks jurisdiction because the appeal is now moot. It argues that "[t]here has been agreement [between the state and IBM] as to all contracts under which work has been commenced and over one-half of the $5,000,000.00 plus program involving RFP's . . . has been expended already." The state

---

[5] See footnote 2, supra.

further argues that because the work has commenced, the injunctive relief that the plaintiff seeks cannot be granted. It relies, for this mootness claim, upon *Mills* v. *Green,* 159 U.S. 651, 653, 16 S. Ct. 132, 40 L. Ed. 293 (1895). We have quoted *Mills* with approval as follows: " 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect . . . . It necessarily follows that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court . . . to grant [the plaintiff] any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' " *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 497–98, 522 A.2d 264 (1987).

The state's argument, however, ignores General Statutes § 4a-65, which provides in pertinent part: "When any state agency purchases or contracts for any supplies, materials, equipment or contractual services contrary to the provisions of this chapter or the regulations promulgated in pursuance thereof, such order or contract shall be void and of no effect." If the plaintiff's claims in this action are sustained, any contract or other agreement with IBM will be null and void. The plaintiff's claims are not moot.[6]

Second, the defendants raise the shield of sovereign immunity. This claim has no merit. Although suits against an officer or a department of the state, as in the present case, are in effect against the state; *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981); sovereign immunity does not bar suits against officials of the state who act in excess of their

[6] Although the prayer for relief seeks to enjoin the state from opening and examining bids and entering into a contract pursuant to the RFPs, it also seeks "such other and further relief as is just and proper . . ." under which appropriate relief can be given.

statutory authority, as the plaintiff alleges herein. *Savage* v. *Aronson,* 214 Conn. 256, 264, 571 A.2d 696 (1990).

The judgment is reversed and the case is remanded for an evidentiary hearing on the defendants' motion to dismiss.

In this opinion the other justices concurred.