[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 12144
On May 5, 1998, the plaintiffs, Connecticut Associated Builders and Contractors ("ABC"), All Electric Co., Electric Contractors, Inc. and John Schleifer, filed a three count complaint against the defendant, Theodore R. Anson, the commissioner of public works, seeking injunctive relief, attorneys' fees and costs.
In their amended complaint of May 20, 1998, the plaintiffs allege the following facts. On or about March 1, 1998, the defendant invited "sealed bids on a project described as `Central Connecticut State University New Office/Classroom Building and Garage . . .'" (¶ 6) The bid package contained a requirement that each bidder sign a Project Labor Agreement ("PLA")[1] to be entered into by the "Construction Manager for the Project, end the Connecticut State Building and Construction Trades Council ["BCTC"] . . . and each of its affiliated Local Unions . . ." (¶ 8) The plaintiff contractors, All Electric Co., Electric Contractors, Inc., and members of the plaintiff ABC allege that they would have submitted bids if they were not required to enter into the PLA. (¶ 10)
The plaintiffs claim in count one that by requiring all bidders to sign the PLA the commissioner acted in excess of the authority granted him by the competitive bidding statutes, General Statutes § 4b-91 et seq. In count two, they claim that certain parts of the competitive bidding statutes are unconstitutionally vague and unlawfully delegate authority, and in count three that the commissioner's actions constitute unlawful infringement of the constitutional rights to free speech and association. The plaintiffs seek to enjoin the defendant from opening any bids submitted on the project or awarding any contracts, and from requiring that bidders and prospective bidders agree to the terms of the PLA.
On July 24, 1998, the contract was awarded to Fusco Corporation, who then successfully moved to intervene in the action as a defendant. Both Fusco and the commissioner move to dismiss the action on the ground that none of the plaintiffs have standing to bring this action. The motion to dismiss raises factual questions requiring an evidentiary hearing. "When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and CT Page 12145 to cross-examine adverse witnesses." Unisys Corp. v. Dept. ofLabor, 220 Conn. 689, 695-96, 600 A.2d 1019 (1991). By agreement of the parties, a joint hearing on the motion to dismiss and the amended complaint was held September 16-18, 1998.
 STANDING
"It is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) UnisysCorp. v. Dept. of Labor, supra, 220 Conn. 693.
 John Schleifer
Schleifer is an electrician currently employed by All Electric, Inc., in New Haven. He is not a member of ABC, nor has he ever been a member of a union because he is opposed to the way union labor operates. He testified that he understands from representations of others and from listening to other testimony in this case that the state's use of a PLA on this project would affect him as a taxpayer.
"A taxpayer is not entitled to an injunction restraining such illegal conduct as the plaintiff claims unless he has suffered a pecuniary or other direct loss in that capacity." Unisys Corp. v.Dept. of Labor, supra, 220 Conn. 695. "It is not enough for the plaintiff to show that [his] tax dollars have contributed to the challenged project; . . . the plaintiff must prove that the CT Page 12146 project has directly or indirectly increased [his] taxes . . . or, in some other fashion, caused [him] irreparable injury in [his] capacity as a taxpayer." (Citations omitted.) Sadloski v.Manchester, 228 Conn. 79, 83, 634 A.2d 888 (1993) "To have standing, a taxpayer must prove that he is directly affected in a pecuniary manner." Atwood v. Regional School District No. 15,169 Conn. 613, 617, 363 A.2d 1038 (1975).
Schleifer did not provide any specific information on how his pecuniary interests would be harmed. The fact that his tax dollars are supporting union labor, which he is ideologically opposed to, is not enough. To the extent that he challenges the processes as unfair, or that he is somehow disaffected by the process, he is in no different position from the general public. Accordingly, he has no standing to challenge the bidding process.
 All Electric, Inc., and Electric Contractors, Inc.
These plaintiffs are electrical subcontractors. Testimony at the hearing included that of Leo Christmas, co-owner of Electric Contractors, Inc. (ECI), who testified that ECI has a general contractor's license, but did not bid on this project. Neither did it bid as a subcontractor, although it was invited to do so by general contractors. He testified that it would not be practical for his company to work under a PLA because he would be limited in the number of his own employees he could use on the job which would make it financially burdensome on the company. Louis Stanio, an employee of All Electric and the president of ABC, also testified that working on the CSCU project under a PLA would be costlier for his company. All Electric was not invited to submit bids by any general contractor. These plaintiffs claim a direct injury as a result of the PLA requirement in that their chances of getting work from general contractors are lessened because non-union general contractors are less inclined to bid and union contractors are more likely to hire union subcontractors, for philosophical or other reasons. The defendants argue that the status of these plaintiffs as potential subcontractors does not give them standing, because a subcontractor has no legal interest in the bidding process.
The only Connecticut case to discuss a subcontractor's standing to challenge an award is Milward Corp. v. City ofHartford, Superior Court, judicial district of Hartford New Britain at Hartford, Docket No. 702290 (December 6, 1991, Schaller, J.) (5 CONN. L. RPTR. 344). In Milward, the plaintiff CT Page 12147 subcontractor had successfully bid on one general contractor's bid and alleged that awarding the contract to another general contractor contravened the City of Hartford's women and minority business enterprise utilization commitments. The court concluded that a subcontractor had no standing to challenge the award. Citing Bauman Gerrity of Lakeville v. George F. Emerson, Inc.14 Conn. App. 261, 265 n. 3, 540 A.2d 710 (1988), in which the court upheld the propriety of an instruction charging the jury that "the submission of a bid by a subcontractor gives rise to no rights on his part, unless and until the bid is accepted by the general contractor," the court reasoned that "[s]ince a subcontractor does not have a legally protected interest in having its bid accepted by its general contractor, it follows that a subcontractor can have no legally protected interest in having its prime contractor's bid accepted by a public entity."Id., 345.
The facts of the present case distinguish it somewhat fromMilward because neither of these subcontractors submitted a bid to a general contractor who bid on the CSCU project. But the policy reasons behind the Milward analysis are just as pertinent. "[Wlhile the courts have begun to broaden certain aspects of bidder standing, a subcontractor, not being a part to the bidding and award process for the general contract, has an interest too attenuated to permit standing. The inclusion of subcontractors in the litigation process would destroy the balance between fairness in the bidding process and the public's interest in the swift and efficient completion of its public works projects that the earlier cases have attempted to strike." Milward Corp. v. City ofHartford, supra, 5 CONN. L. RPTR. 345. This court agrees with this reasoning. A diminished possibility of potential work as subcontractor on a particular project is too attenuated an interest to give them a legal stake in the bidding process. Accordingly, these two plaintiffs do not have standing as subcontractors, whether they submitted bids to general contractors or not.
 Connecticut Associated Builders and Contractors (ABC)
The remaining plaintiff, ABC, claims standing as an association representing the interests of its members. The Connecticut Supreme Court "has recognized representational standing in accordance with the holdings of the United States Supreme Court. `[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have CT Page 12148 standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. [Hunt v.Washington State Apple Advertising Commission, 432 U.S. 333, 343,97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)]. . .'" Connecticut Assn. ofNot-for-Profit Providers for the Aging v. Dept. of SocialServices, 244 Conn. 378, 386, 709 A.2d 1116 (1998). Not all members of the association must be similarly injured. Id., 387. As long as at least one member has standing, an organization has standing. United Food and Commercial Workers v. Brown Group Inc.,517 U.S. 544, 116 S.Ct. 1529, 1535, 134 L.Ed.2d 758 (1996). "Permitting the association or organization to sue to protect the interests of its members avoids multiplicity of suits by similarly situated plaintiffs involving the same or similar causes of action and provides an efficient and expeditious method of adjudicating disputes." (Internal quotation marks omitted.)Connecticut Assn. of Health Care Facilities. Inc. v. Worrell,199 Conn. 609, 618, 508 A.2d 743 (1986).
The defendants argue that ABC does not have standing because none of its members have standing to bring this action based on the fact, undisputed by the plaintiffs, that no member of ABC which qualified as a general contractor to bid on this project was precluded from submitting a bid; The defendants presented evidence that a majority of bidders (5 out of 9) were, in fact, non-union shops. Because all qualified contractors, whether union or non-union, could submit bids, the defendants argue that those who chose not to bid have no standing to challenge the award of the contract to Fusco. ABC claims standing because its membership includes general contractors who would have bid on the project if it had not included the PLA. It argues that the PLA puts non-union contractors at an economic disadvantage and therefore does not allow all qualified bidders to compete on an equal basis.
"It is a well established principle that [m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they should be construed to accomplish these purposes fairly and reasonably with sole reference to the public interest." (Internal quotation marks omitted.) Spiniello Construction Co. v. Manchester,189 Conn. 539, 543-44, 456 A.2d 1199 (1983). The Supreme Court has recognized an exception to the general rule that unsuccessful CT Page 12149 bidders do not have standing to challenge the award of a public contract, granting standing to unsuccessful bidders who make a colorable claim of "fraud, corruption or acts undermining the objective and integrity of the bidding process." ArdmareConstruction Co. v. Freedman, 191 Conn. 497, 504-05, 467 A.2d 674
(1983); Spiniello Construction Co. v. Manchester, supra,189 Conn. 542. While Ardmare and Spiniello addressed only parties who had submitted bids, the Supreme Court expanded this to all parties qualified to bid. "[I]f the plaintiff establishes that it would have submitted a bid if not for the [limiting conditions], its status would, for purposes of standing, be the equivalent of one who had submitted a bid." Unisys Corp. v. Dept. of Labor,supra, 220 Conn. 694-95.
In Unisys, the plaintiff claimed that the Department of Labor acted illegally by sending out requests for proposals (RFPs) for computer equipment limited to those manufactured by IBM, thus excluding the plaintiff, a manufacturer of computer equipment allegedly comparable to IBM, from submitting a bid to supply the department with its own computers. The court held that this amounted to favoritism because it selected one potential bidder over another. The decision concluded with three prerequisites for standing to challenge the award of a public contract: a party must show 1) that it would have submitted a bid but for the challenged restriction, 2) that it was qualified to submit a bid, and 3) that the restrictions of the bid "undermined the object and integrity of the competitive bidding process, or that there was proof of favoritism." Unisys Corp. v. Dept. of Labor, supra,220 Conn. 695. Although the single source specification at issue in Unisys did result in the plaintiffs being precluded from submitting a bid, there is no language in the decision that clearly says that its holding is limited to those situations in which a party is precluded from submitting a bid by a requirement of the bid package. A situation could arise in which conditions placed on working conditions for a public project would be such as to be considered exclusionary, i.e., a type of de facto discrimination.
What may appear to favor one class of potential bidder over another, however, may be justified by a legitimate public interest. As the Supreme Court said, "RFPs are not necessarily illegal merely because the specifications of the RFPs can be met by only one vendor. . . [M]ore must appear in order to render the specifications and the contract based thereon illegal . . . since a particular product, that is, one marketed by only one CT Page 12150 manufacturer, may be required in the public interest. However, an objectionable and invalidating element is introduced when specifications are drawn to the advantage of one manufacturer not for any reason in the public interest but, rather, to insure the award of the contract to that particular manufacturer." (Citations omitted; internal quotation marks omitted.) UnisysCorp. v. Dept. of Labor, supra, 220 Conn. 696. Under the rule ofUnisys, then, the plaintiffs do not have to show that they were absolutely precluded from bidding, only that the conditions placed on the bid were not justified by a legitimate public interest. This rule is designed to "strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public." Ardmare ConstructionCo. v. Freedman, supra, 191 Conn. 505.
The plaintiffs presented testimony from representatives of two non-union general contractors, Thomas Haynes, vice-president of Haynes Construction Co., and Michael Kolakowski, president of Konover Construction Co. Both individuals are members of ABC. They testified that this project was the type of project their companies would usually bid on but they decided not to submit a bid because of the PLA requirement. They claim that the PLA requirement makes it economically infeasible for them to bid on the project because they would not be able to use their own workforce. They claim that this puts them at a disadvantage in the bidding, and is the type of inequity the competitive bidding statutes prohibit because it interferes with open competition.
ABC claims that because these contractors were not afforded a fair opportunity to bid, their situation is analogous to challenges to affirmative action or set-aside programs, in which the courts have consistently recognized standing, citingNortheastern Florida Chapter of the Associated GeneralContractors of America v. City of Jacksonville, 508 U.S. 656,113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (plaintiffs precluded from bidding for certain city contracts set aside for minority business enterprises); Adarand Constructors, Inc. v. Pena,515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (plaintiffs excluded from the bidding process because they did not qualify as a minority business); Dynalantic Corp. v. Dept. of Defense,115 F.3d 1012 (D.C. Cir. 1997) (only contractors qualifying as "disadvantaged" businesses could bid certain projects). These cases are similar to Unisys in that the plaintiffs were CT Page 12151 completely precluded from bidding because they did not qualify as "minority businesses." The projects were only open to a limited class of contractors, much like the contract in Unisys was only available to a class of identifiable vendors. In language similar to that of Unisys, the United States Supreme Court said: "To establish standing, therefore, a party challenging a set-aside program . . . need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." Northeastern Florida Chapter ofthe Associated General Contractors of America v. City ofJacksonville, supra, 508 U.S. 666. The distinguishing factor in these cases is that they were equal protection cases brought under the 14th Amendment of the United States Constitution, alleging illegal discrimination based on race, in which there is a presumption of discrimination arising from the race-based classification which can only be overcome by a compelling state interest. There is no such presumption in this case. The plaintiff has the burden of showing that the bidding process has been undermined by fraud, corruption, or favoritism.
The state has a legitimate interest in completing a public works project within time and financial constraints. Evidence showed that the commissioner decided to use the PLA on this project based on knowledge of the use of PLAs by other public entities. The plaintiffs did not present any evidence that the PLA was a means to exclude nonunion contractors or amounted to such exclusion. The purpose of the competitive bidding statutes is not to aid the contractors by making it economically feasible for all to bid, but to promote the public interest in the efficient completion of public works projects. See SpinielloConstruction Co. v. Manchester, supra, 189 Conn. 543 (purpose of competitive bidding laws is to benefit the taxpayers, not the bidders). The state's interest in its own finances when undertaking public works projects takes precedence over the finances or business methods of individual contractors.
Whether using a PLA is actually an effective method of achieving the state's aims in completing a major public works project within the necessary time and financial constraints is not for the court to decide. The commissioner's decision to try a PLA on this project was a legitimate exercise of his discretion to find a way to achieve the state's goal while remaining within the bounds of the competitive bidding statutes. The court cannot conclude from the evidence presented that the decision to use the PLA was based on any improper motive. CT Page 12152
Accordingly, ABC has not shown the existence of favoritism, fraud or corruption in the bidding process, and therefore does not have standing to challenge the use of the PLA.
Because none of the plaintiffs have demonstrated the requisite conditions for standing, the defendants' motion to dismiss is granted.
JOHN J. LANGENBACH, SUPERIOR COURT JUDGE