[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 14808
On October 22, 1998, the plaintiffs, Connecticut Associated Builders and Contractors (ABC), Electrical Contractors, Inc. (ECI) and Rhoan Stewart d/b/a Dynamic Electrical Contractor (Rhoan Stewart) filed a four-count complaint against the defendant, city of Hartford, seeking injunctive relief, attorney's fees and costs.
The plaintiffs allege the following facts in their complaint. On or about June 29, 1998, the defendant issued an invitation for "sealed bids on a phase of the Learning Corridor Project[1]
described as Bid Package 20A — Pre-cast Parking Garage . . ." (Count one, ¶ 8.) Also on or about June 29, "the [c]ity caused to be issued General Instructions to Bidders for Construction of the Learning Corridor Project," which establish the procedure for the preparation and submission of bids on the project. (Count one, ¶ 9.) Later, on or about October 14, 1998, the city caused to be issued a supplement to the general instructions which contained the requirement that any successful bidder on the project be "willing, ready and able to become a party to and comply with" a Project Labor Agreement (PLA)[2]. (Count one, ¶¶ 11, 12) The plaintiffs allege that were it not for the requirement that they enter into the PLA, the plaintiffs ECI and Rhoan Stewart, as well as several members of the plaintiff ABC, would have submitted bids on the project. (Count one, ¶ 15).
The plaintiffs claim in count one that by requiring all bidders to agree to be bound by the terms of the PLA, the defendant is violating the competitive bidding provisions of the city of Hartford, Hartford Municipal Code, c. XXVIII, § 28-185, and the state of Connecticut, General Statutes §10-287. In count two, the plaintiffs assert that defendant lacks the authority under the operative bidding provisions to impose the terms of the PLA on bidders or prospective bidders. In count three, the plaintiffs allege that the PLA requirement denies the plaintiffs the freedom, guaranteed by the constitutions of the state of Connecticut and the United States, to choose whether to associate with the local unions who are signatories to the PLA. In count four, the plaintiffs claim that defendant's conduct in failing to provide the plaintiffs with copies of the collective bargaining agreements included in the PLA amounts to illegal favoritism to those bidders who are already signatory to the collective bargaining agreements with the local unions that are CT Page 14809 parties to the PLA. The plaintiffs seek to enjoin the defendant from opening any bids on the project, awarding or entering into any contracts in connection with the project, or commencing construction.
"When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." Unisys Corp. v.Department of Labor, 220 Conn. 689, 695-96, 600 A.2d 1019 (1991). As this motion to dismiss raises such factual questions, an evidentiary hearing was held on December 8, 1998.
"It is a basic principle of the law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy . . . Standing is not a technical rule intended to keep aggrieved parties out of court, nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) UnisysCorp. v. Department of Labor, supra, 220 Conn. 693.
"The grounds which may be asserted in [a motion to dismiss] are: (1) lack of jurisdiction over the subject matter . . ."Zizka v. Water Pollution Control Authority, 195 Conn. 682, 687,490 A.2d 509 (1985), citing Practice Book § 10-31, formerly § 143. "[S]tanding implicates a court's subject matter jurisdiction and may be raised at any point in judicial proceedings." State v. Anonymous, 237 Conn. 501, 509-10,680 A.2d 956 (1996).[3] "The plaintiff has the burden of proving standing." Fink v. Golenbock, 238 Conn. 183, 199, 680 Conn. 1243
(1996). CT Page 14810
Plaintiffs ECI and Rhoan Stewart are subcontractors. Testimony at the hearing included that of Leo Christmas, co-owner of ECI, and Rhoan Stewart. Christmas and Stewart both testified that their companies began preparing bids as subcontractors for the project but abandoned their efforts upon learning of the PLA requirement. These plaintiffs claim that "the requirement of a PLA has caused them direct injury by, among other things, diminishing their ability to fairly compete for work on this public project." (Plaintiff's Opposition to Defendant's Motion to Dismiss, p. 2.) Presumably, as subcontractors, the plaintiffs contend that the PLA requirement decreases their chances of getting work from general contractors because nonunion general contractors are less likely to bid and union contractors are more likely to hire union subcontractors.
The defendant argues that the plaintiffs do not have standing because they had no intention to bid as general contractors on the project. The defendant contends that a subcontractor's interest in the bidding process is too attenuated to permit standing to sue under Connecticut law. (See Defendant's Supplemental Memorandum of Law in Support of Motion to Dismiss, p. 3, 10.)
The first Connecticut case that discusses a subcontractor's standing to challenge an award is Milward Corp. v. City ofHartford, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 702290 (December 6, 1991,Schaller, J.) (5 CONN. L. RPTR. 344). The court in Milward held that where the plaintiff-subcontractor successfully bid on an unsuccessful bid by a general contractor, it lacked standing to challenge the award in question. The court first noted, citingBaumann Gerrity of Lakeville v. George F. Emerson, Inc.,14 Conn. App. 261, 265 n. 3, 540 A.2d 710 (1988), that the submission of a bid by a subcontractor does not give rise to any right on the subcontractor's part, unless and until the general contractor accepts the bid. Milward Corp. v. City of Hartford, supra, 345. The court then went on to reason: "Since a subcontractor does not have a legally protected interest in having its bid accepted by its general contractor, it follows that a subcontractor can have no legally protected interest in having its prime contractor's bid accepted by a public entity." Id.
In Connecticut Associated Builders and Contractors, Inc. v.Anson, Superior Court, judicial district of Hartford, Docket No. CT Page 14811 579841 (October 26, 1998, Langenbach, J.) (23 CONN. L. RPTR. 1), this court rejected the notion that Milward is inapplicable where the subcontractors in question did not actually submit a bid to a general contractor who bid on the project. Specifically, this court held that "[a] diminished possibility of potential work as subcontractor on a particular project is too attenuated an interest to give [the subcontractor] a legal stake in the bidding process." Id. This court reasoned that while the facts might be somewhat distinguishable from those in Milward, the policy reasons behind the analysis in Milward were just as pertinent: "[W]hile the courts have begun to broaden certain aspects of bidder standing, a subcontractor, not being a party to the bidding and award process for the general contract, has an interest too attenuated to permit standing. The inclusion of subcontractors in the litigation process would destroy the balance between fairness in the bidding process and the public's interest in the swift and efficient completion of its public works projects that the earlier cases have attempted to strike." (Internal quotation marks omitted.) Id. Accordingly, this court held that the plaintiff subcontractors lacked standing regardless of whether they submitted bids to general contractors. Id.
In the present action, the plaintiffs ECI and Rhoan Stewart did not submit bids, nor did they intend to submit bids, as general contractors. These plaintiffs, rather, are similarly situated to those in Anson. Accordingly, these plaintiffs, as subcontractors, lack standing to challenge the PLA requirement.
The plaintiff ABC claims standing as an association representing the interests of its members. The Connecticut Supreme Court has adopted the standard for representational standing set forth by the United States Supreme Court in Hunt v.Washington State Apple Advertising Commission, 432 U.S. 333, 343,97 S.Ct. 2434, 53 L.Ed. 383 (1977). See Connecticut Assn. ofNot-for-Profit Providers for the Aging v. Department of SocialServices, 244 Conn. 378, 386, 709 A.2d 1116 (1998). "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." (Internal quotation marks omitted.) Id. Not all members of the association must be similarly injured. See Timber Trails Corp. v. Planning ZoningCommission, 222 Conn. 380, 395, 610 A.2d 620 (1992). As long as CT Page 14812 at least one member has standing, an organization has standing.United Food and Commercial Workers Union Local 751 v. BrownGroup, Inc., 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758
(1996). "Permitting the association or organization to sue to protect the interests of its members avoids the multiplicity of suits by similarly situated plaintiffs involving the same or similar causes of action and provides an efficient and expeditious method of adjudicating disputes." (Internal quotation marks omitted.) Connecticut Assn. of Health Care Facilities, Inc.v. Worrell, 199 Conn. 609, 618, 508 A.2d 743 (1986).
The defendant asserts that ABC does not have standing to bring the present action because none of its members were interested or qualified to bid on the project as general contractors. Thus, the defendant argues, no member was precluded from submitting a bid on the project as a result of the PLA requirement. ABC concedes that none of its members submitted bids on the project. ABC argues that it is not challenging a specific bid award, and therefore it does not have to show that it bid on the project to establish standing. Rather, ABC claims its challenge is against the bidding requirements imposed by the PLA, which prevents ABC's members from competing on equal footing in the bidding process.
"It is a well established principle that [m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they should be construed to accomplish these purposes fairly and reasonably with sole reference to the public interest." (Internal quotation marks omitted.) Spiniello Construction Co. v. Manchester,189 Conn. 539, 543-44, 456 A.2d 1199 (1983). "[T]he public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a private attorney general." (Internal quotation marks omitted.) Ardmare Construction Co. v.Freedman, 191 Conn. 497, 504, 467 A.2d 674 (1983).
"Where the municipality reserves the right to reject any and all bids, no bidder can claim any contractual rights until he has been awarded the contract." (Internal quotation marks omitted.)Spiniello Construction Co. v. Manchester, supra, 189 Conn. 544. CT Page 14813 Thus, in general, an unsuccessful bidder has no standing to challenge the award of a public contract. See ArdmareConstruction Co. v. Freedman, supra, 191 Conn. 501; see also 10 E. McQuillan, Municipal Corporations (3d Ed. Rev. 1990) § 29.77, p. 520-21. The Supreme Court has recognized, however, an exception to this general rule, granting standing to unsuccessful bidders who make a colorable claim of "fraud, corruption or acts undermining the objective and integrity of the bidding process."Ardmare Construction Co. v. Freedman, supra, 504-05; see alsoSpiniello Construction Co. v. Manchester, supra, 544. The Supreme Court, moreover, has expanded this exception to all parties qualified to bid. See Unisys Corp. v. Department of Labor, supra,220 Conn. 694-95. "[I]f the plaintiff establishes that it would have submitted a bid if not for the [limiting conditions], its status would, for purposes of standing, be the equivalent of one who had submitted a bid." Id.
In Unisys, the plaintiff claimed that the Department of Labor acted illegally by sending out requests for proposals (RFPs) for computer equipment limited to those manufactured by IBM, thus excluding the plaintiff, a manufacturer of computer equipment allegedly comparable to IBM equipment, from submitting a bid to supply the department with its own computers. The Supreme Court held that this amounted to favoritism because it selected one potential bidder over another. The decision concluded with a statement of three prerequisites that a party must show in order to establish standing to challenge the award of a public contract. In order to establish standing, a party must show: (1) That it would have submitted a bid but for the challenged restriction; (2) that it was qualified to submit a bid; and (3) that the restrictions placed on bidding "undermined the object and integrity of the competitive bidding process, or that there was proof of favoritism." Id., 695. "Although the single source specification at issue in Unisys did result in the plaintiffs being precluded from submitting a bid, there is no language in the decision that clearly says that its holding is limited to those situations in which a party is precluded from submitting a bid by a requirement of the bid package. A situation could arise in which conditions placed on working conditions for a public project would be such as to be considered exclusionary, i.e., a type of de facto discrimination." Connecticut Associated Buildersand Contractors v. Anson, supra, Superior Court, Docket No. 579841, 23 CONN. L. RPTR. 1.
What may appear to amount to favoritism, however, may be CT Page 14814 justified by a legitimate public interest. "[A]n objectionable and invalidating element is introduced when [limiting conditions] are drawn to the advantage of one [bidder] not for any reason in the public interest but, rather, to insure the award of the contract to that particular [bidder]." Unisys Corp. v. Departmentof Labor, supra, 220 Conn. 696. Under this rule, then, the plaintiffs do not have to show that they were absolutely precluded from bidding, but only that the conditions placed on the bid were not justified by a legitimate public interest. This rule is designed to "strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might still result in extensive delay in the commencement and completion of government projects to the detriment of the public." Ardmare Construction Co. v. Freedman,supra, 191 Conn. 505.
The defendant argues that none of the members of the plaintiff ABC were even qualified to bid on the project, and thus ABC cannot claim that one of its members would have bid on the project but for the PLA requirement. Even assuming, however, that at least one member of ABC would have bid on the project if not for the imposition of the PLA requirement, there is no evidence that the PLA was imposed for the purpose of excluding nonunion contractors or amounted to such an exclusion. The defendant asserts that it has a legitimate interest in reducing the risk that labor strife will delay or disrupt construction or make it more expensive than planned, and that the defendant's judgment that the PLA will serve this interest is within the reasonable exercise of its discretion. Such a justification for the use of a PLA was upheld by this court in Connecticut Associated Buildersand Contractors v. Anson, supra, Superior Court, Docket No. 579841, 23 CONN. L. RPTR. 1. Whether the use of a PLA is actually an effective means of achieving such aims is not for the court to decide. The decision to require adherence to a PLA was within the defendant's discretion to find a way to achieve its goals while remaining within the bounds of the competitive bidding statutes.
The plaintiff ABC argues that the disappointed and discouraged bidder cases — namely Spiniello, Ardmare andUnisys — are not controlling because those cases involved challenges to the awarding of a bid. In the present case, ABC contends, the challenge is not to the awarding of a bid, but to the process by which the bidding was structured. The plaintiffs in Anson also brought challenges to the bidding process as a whole and to the defendant commissioner's exercise of authority CT Page 14815 under the bidding statutes. This court held that in order to raise such challenges to the bidding process, the plaintiffs still had to satisfy the standard for standing set forth inSpiniello, Ardmare and Unisys. See Connecticut Association ofContractors and Builders v. Anson, supra, Superior Court, Docket No. 579841, 23 CONN. L. RPTR. 1. In addition, the policy reasons upon which the holdings in the disappointed bidder cases were grounded are implicated in this case despite the differing theories upon which the plaintiffs have chosen to proceed. Irrespective of whether the challenge is to the specific award or to the bidding process in general, the plaintiffs in this case are seeking to enjoin the awarding of any contract or the commencement of construction on the project. Accordingly, the court must consider "the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public."Ardmare Construction Co. v. Freedman, supra,191 Conn. 505. Therefore, the plaintiff ABC must satisfy the standard set forth in the disappointed bidder cases in order to establish that they have standing to bring the present action.
ABC further argues that by requiring it to show the existence of fraud, corruption or favoritism in the bidding process, the court is impermissibly reaching the merits of the case. CitingAssociation of Data Processing Service Organizations v. Camp,397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), Ducharme v.Putnam, 161 Conn. 135, 139, 285 A.2d 318 (1971), and Reitzer v.Board of Trustees of State Colleges, 2 Conn. App. 196, 200,477 A.2d 129 (1984), ABC contends that standing involves only the question of "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) Ducharme v.Putnam, supra, 139. While this is undoubtedly an accurate statement of the law, it does not follow that this rule is inconsistent with the standard set forth in the disappointed bidder cases. "The zone of interests protected by the competitive bidding [laws] . . . is the right of the public to the lowest responsible bidder, absent fraud, corruption, or favoritism or acts undermining the objectivity and integrity of the bidding process." Kendland Co. v. City of Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 271432 (December 5, 1990, Jones, J.). By requiring ABC to produce evidence that the bidding process was undermined by fraud, CT Page 14816 corruption or favoritism, the court is simply forcing the party challenging the competitive bidding process to make a colorable claim of injury that it is within the zone of interests protected by the competitive bidding laws pursuant to the rule set forth inCamp, Reitzer, and Ducharme.
ABC also claims that because its members were not afforded a fair opportunity to bid, their situation is analogous to challenges to affirmative action or set-aside programs, in which the courts have consistently recognized standing. In the plaintiffs' memorandum, ABC cites Adarand Constructors, Inc. v.Pena, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995) (plaintiffs excluded from the bidding process because they did not qualify as a minority business); Northeastern Florida Chapterof the Associated General Contractors of America v. City ofJacksonville, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586
(1993) (plaintiffs precluded from bidding for certain city contracts set aside for minority business enterprises); andDynalantic Corp. v. Department of Defense, 115 F.3d 1012 (D.C. Cir. 1997) (only contractors qualifying as "disadvantaged" businesses could bid certain projects). In these cases, as inUnisys, bidding was limited to a limited class of contractors which qualified as "minority business." In such circumstances, the United States Supreme Court held that "[t]o establish standing, therefore, a party challenging a set-aside program . . . need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis." Northeastern Florida Chapter ofthe Associated General Contractors of America v. City ofJacksonville, supra, 666.
While the language employed by the United States Supreme Court in Northeastern is similar to that used by the Connecticut Supreme Court in Unisys, there is an important distinguishing element between Unisys and the set-aside cases. In the set-aside cases, the plaintiffs were alleging illegal discrimination based on race in violation of the fourteenth amendment of the United States constitution. In such cases, there is a presumption of discrimination arising from the use of classifications based on race which can only be overcome by showing the existence of a compelling state interest. See generally Adarand Constructors,Inc. v. Pena, supra, 515 U.S. 213-37. In the present case, there is no such presumption. The plaintiff ABC, rather, bears the burden of establishing that the bidding process has been undermined by fraud, corruption or favoritism. ABC has not met CT Page 14817 this burden, and therefore, it lacks standing to challenge the bidding process in question.
None of the plaintiffs have demonstrated the requisite conditions for standing. Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction is granted. Any previous order of this Court granting a temporary restraining order or injunction is vacated.
John J. Langenbach Superior Court Judge