[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
On October 20, 1998, the plaintiff, RAC Construction Corp. (RAC), filed a two-count complaint against the defendants, the State of Connecticut department of public works (DPW) and HRH/Atlas Construction, Inc. (HRH/Atlas), seeking a declaratory judgment as to several issues as well as injunctive relief.
The plaintiff RAC alleges the following facts in its complaint. The defendant DPW, who is responsible for administering the planning and construction of capital improvements undertaken by the state of Connecticut, put out to public bid Project No. BI-RS-208 titled "New Physical Plant Building Southern Connecticut State University New Haven, Connecticut" (project). (Count one, ¶¶ 3-4) Both the plaintiff and the defendant HRH/Atlas bid on the project. (Count one, ¶¶ 5, 7.) The bids were opened on June 17, 1998. (Count one, ¶ 6.) Apparently, HRH/Atlas' bid was the lowest, and accordingly DPW intended to award HRH/Atlas the contract for the project. (Count two, ¶ 8.)
On June 25, 1998, RAC filed a bid protest petition pursuant to § 4b-100-1 et seq. of the Regulations of Connecticut State Agencies. (Count two, ¶ 8.) DPW rejected the petition as premature, but RAC resubmitted its petition, with amendment, on August 14, 1998. (Count two, ¶¶ 8-13.) Pursuant to RAC's second petition, DPW scheduled an informal conference on the matter to be held on September 3, 1998. (Count two, ¶ 14.) On September 18, 1998, following the conference, DPW issued a letter announcing CT Page 1085 that it was rejecting RAC's petition on its merits. (Count two, ¶ 15.) RAC appealed the decision to the commissioner of DPW pursuant to § 4b-100-9 of the Regulations of Connecticut State Agencies, but on October 13, 1998, the commissioner affirmed DPW's rejection of RAC's petition. (Count two, ¶¶ 19-20.) This suit, in which the plaintiff claims that DPW misinterpreted portions of the public bidding statutes, General Statutes §4b-91 et seq., and the associated regulations, was then commenced by service of process on October 23, 1998.
On November 9, 1998, the defendant DPW filed a motion to dismiss for lack of subject matter jurisdiction, asserting three[1]
grounds: (1) sovereign immunity; (2) failure to exhaust available administrative remedies; and (3) failure to comply with the jurisdictional requirements for seeking a declaratory judgment pursuant to General Statutes § 52-29. Also on November 9, 1998, the defendant HRH/Atlas filed a separate motion to dismiss for lack of subject matter jurisdiction, asserting three grounds: (1) lack of standing; (2) failure to exhaust administrative remedies; and (3) failure to join proper parties or give notice as is required in an action for a declaratory judgment. Each defendant also filed a memorandum of law in support of its motion. RAC filed a memorandum of law in opposition to the defendants' motions on November 17, 1998, and a supplemental memorandum on November 18. The defendant DPW filed a reply to the plaintiff's memoranda on November 20. A hearing on the motion to dismiss was held at short calendar on November 30, 1998.
 II
"The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter . . ." Practice Book §10-31, formerly § 143.
"[T]he court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.) Savage v. Aronson,214 Conn. 256, 264, 571 A.2d 696 (1990). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone . . . Where, however . . . the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue and need not conclusively presume the validity of the allegations of the complaint." (Citation omitted; internal quotation marks omitted.) CT Page 1086Barde v. Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000
(1988).
 III STANDING
"It is a basic principle of the law that a plaintiff must have standing for the court to have jurisdiction. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy . . . Standing is not a technical rule intended to keep aggrieved parties out of court, nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Citations omitted; internal quotation marks omitted.) UnisysCorp. v. Department of Labor, 220 Conn. 689, 693, 600 A.2d 1019
(1991).
"[S]tanding implicates a court's subject matter jurisdiction and may be raised at any point in judicial proceedings." State v.Anonymous, 237 Conn. 501, 509-10, 680 A.2d 956 (1996). "The plaintiff has the burden of proving standing." Fink v. Golenbock,238 Conn. 183, 199, 680 A.2d 1243 (1996).
The basis for RAC's challenges, both at this stage and in its earlier petitions to DPW, is that DPW misinterpreted a key requirement in the bidding statutes. Under General Statutes §4b-95a, a general contractor who is bidding on a project may list itself as the subcontractor for a particular segment of the work if the bidder "customarily performs" that type of work. DPW has interpreted § 4b-95a such that a contractor can fulfill this requirement by employing or having on its payroll supervisory staff qualified to perform the type of work that the contractor claims it "customarily performs." DPW's interpretation is reflected in the "objective criteria" it developed pursuant to CT Page 1087 General Statutes § 4b-92 for the purpose of determining which bidder is the "lowest responsible and qualified bidder." The objective criteria, which were included in the bidding package that each bidding contractor was required to complete, states that in order to qualify as a responsible and qualified bidder, the bidder must "[s]how that it customarily employs or has on its payroll supervisory personnel qualified to perform the work called for in the bid specifications." (Complaint, Exhibit I.) RAC argues that "the clear reading of the language of Section 4b-91 through 4b-100, read as a unified method of bidding, require that the bidder, in order to `customarily perform' work must actually have done the work itself, with its own forces and not by hiring subcontractors who it supervises." (Plaintiff's memorandum, p. 2.) In other words, it claims that DPW's interpretation of this requirement contradicts the language of the bidding statutes. Based on the interpretation of the bidding statutes that RAC advances, the defendant HRH/Atlas-would not have satisfied a necessary requirement of being deemed the lowest responsible and qualified bidder.
"Where the [government] reserves the right to reject any and all bids, no bidder can claim any contractual rights until he has been awarded the contract." (Internal quotation marks omitted.)Spiniello Construction Co. v. Manchester, 189 Conn. 539, 544,456 A.2d 1199 (1983). Accordingly, Connecticut courts have "consistently followed the view that an unsuccessful bidder has no standing to challenge the award of a public contract." ArdmareConstruction Co. v. Freedman, 191 Conn. 497, 501, 467 A.2d 674
(1983). An unsuccessful bidder has standing only "where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of the [governmental] officials." Spiniello Construction Co. v.Manchester, supra, 544. "It is a well established principle that [public] competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they should be construed to accomplish these purposes fairly and reasonably with sole reference to the public interest." (Internal quotation marks omitted.) Id., 543-44. Thus, the rule that limits those situations in which an unsuccessful bidder can assert standing to sue is designed to "strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the CT Page 1088 commencement and completion of government projects to the detriment of the public." Ardmare Construction Co. v. Freedman,supra, 505.
RAC asserts in its complaint that it has standing because DPW has interpreted General Statutes § 4b-91 et seq. incorrectly, and consequently, its intention to award the contract on the project to HRH/Atlas amounts to favoritism. (See Count two, ¶ 21.)
In Ardmare Construction Co. v. Freedman, supra,191 Conn. 501-07, the Supreme Court found a disappointed bidder to lack standing. The defendant, the commissioner of administrative services, solicited bids on a particular project, and the plaintiff submitted a bid. The plaintiff's bid was the lowest, but it was rejected because the signature on the bid was impressed with a rubber stamp. The administrative services department had in the past maintained the practice of rejecting all bids that lacked an original handwritten signature. The contract was awarded to the next lowest bidder, and the plaintiff sued, but was found to lack standing. In so finding, the court distinguished those situations in which the company that received the contract was given some special advantage over the plaintiff or was privy to some secret information. See Id., 507. The court added: "The commissioner did not apply its requirement inconsistently or in a discriminatory fashion. Nor was there any proof that the commissioner was acting in bad faith. In short, the commissioner made a good faith interpretation of the competitive bidding statute requirements, and applied it in a consistent fashion." Id.
In Premier Roofing Co. v. Department of Public Works, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 702631 (April 10, 1992) (Aronson, J.), the court, under facts similar to those in the present action, relied on theArdmare Construction Co. v. Freedman decision in granting a motion to dismiss. The plaintiff in Premier Roofing claimed it had standing to challenge the award of a contract to the low bidder because it alleged that the defendant DPW had interpreted a requirement contained in the bidding statute to the benefit of the low bidder. However, the court held that these allegations were insufficient to meet the rule for standing set out inArdmare and Spiniello, noting that "the plaintiff has not alleged favoritism or corruption. At most the plaintiff has alleged that the defendant Department of Public Works has misinterpreted a CT Page 1089 statute." Premier Roofing Co. v. Department of Public Works,supra, Superior Court, Docket No. 702631.
In the present action, like in Premier Roofing and Ardmare, the plaintiff has not alleged how DPW's interpretation of the bidding statutes amounts to fraud, corruption or favoritism. There is no allegation that the requirements were applied inconsistently or in a discriminatory fashion. The plaintiff does not allege that DPW's interpretation was based on a desire to give HRH/Atlas or any particular bidder an advantage. Rather, in the affidavit of Richard F. Piotrowski, the Bureau Chief, Facilities Design and Construction for the defendant DPW, which was attached to the defendant DPW's motion to dismiss, Piotrowski testified that DPW has consistently interpreted the "customarily performs" requirement to include supervisory responsibilities. (Affidavit of Richard F. Piotrowski, ¶ 15.) Its interpretation is based on the fact that "[i]t is a standard business practice of general contractors to keep their payrolls to a minimum by having a permanent staff ordinarily comprised of supervisors and administrators, rather than laborers." (Affidavit of Richard F. Piotrowski, ¶ 5.)
It is found that the plaintiffs have not alleged facts necessary to establish that DPW's conduct amounted to fraud, corruption, or favoritism, or acts undermining the competitive bidding process. Rather, at most, the plaintiff has alleged that DPW has misinterpreted a statute. It is further found that upon a reading of the language of General Statutes § 4b-91 et seq., DPW's interpretation of the statute is reasonable. The statutes do not suggest that an interpretation of the "customarily performs" requirement as strict as the one advanced by the plaintiff is, by any means, mandated.
RAC argues that despite the language in Ardmare and Spiniello
that limits a disappointed bidder's standing, General Statutes § 4b-100 confers standing on disappointed bidders that allege a violation of General Statutes §§ 4b-91 to 4b-100 regardless of whether that bidder alleges fraud, corruption or favoritism. RAC bases its claim on the fact that § 4b-100 was enacted in 1989, after the Ardmare case was decided. Claims alleging violations outside the statutory scheme, RAC contends, require proof of fraud, corruption, favoritism or acts undermining the object and integrity of the bidding process, while claims alleging violations of statutory requirements only necessitate proof that the statute was violated. The reason, RAC states, is CT Page 1090 that § 4b-100 specifically gives "any party whose financial interests may be affected" a statutory right to be heard on "claims alleging a violation of sections 4b-91 to 4b-100, inclusive." General Statutes § 4b-100.
It is true that General Statutes § 4b-100 was enacted in 1989, after the Ardmare case was decided in 1983. See Public Acts 1989, No. 89-367, § 5. However, nowhere in § 4b-100 is there language which explicitly grants a private right of action in Superior Court for alleged violations of the referenced statutes. "When the legislature has authorized supplementary private causes of action, it has done so expressly." Middletownv. Hartford Electric Light Co., 192 Conn. 591, 596, 473 A.2d 787
(1984); see, e.g., General Statutes § 42-110g(a) ("[a]ny person who suffers any ascertainable loss . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business . . ."). In addition, decisions since the enactment of § 4b-100 in 1989 in which violations of General Statutes § 4b-91 et seq. were alleged have required the allegation of fraud, corruption, favoritism or acts undermining the object and integrity of the bidding process in order to establish standing. See, e.g., The Harvey Robbin Co.v. Cristwood Contracting, Inc., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 459849 (September 13, 1995) (Goldberg, J.). Moreover, regardless of whether the plaintiff is challenging a requirement rooted in statute or merely in the bidding documents, the policy reasons upon which the holdings in Ardmare, Spiniello and Unisys Corp. v.Department of Labor, supra, are based are equally valid. Such policy considerations spawned the rule that an unsuccessful bidder lacks standing to sue unless it alleges fraud, corruption, favoritism or acts undermining the object and integrity of the competitive bidding process. In the present case, RAC has not sufficiently alleged any of these factors. Accordingly, RAC lacks standing and the defendants' motions to dismiss for lack of subject matter jurisdiction is granted.
Stengel, J.